APRIL L. HOLLINGSWORTH (Bar No. 9391)
KATIE PANZER (Bar No. 16919)
**HOLLINGSWORTH LAW OFFICE, LLC**
1881 South 1100 East
Salt Lake City, Utah 84105
Telephone: 801-415-9909
april@aprilhollingsworthlaw.com
katie@aprilhollingsworthlaw.com
*Attorneys for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| **ELIZABETH GRAHAM**<br><br>Plaintiff,<br><br>vs.<br><br>**BRISTOL HOSPICE HOLDINGS, INC.,**<br><br>Defendant. | **PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>Case No. 2:21-cv-00754<br><br>Judge Ted Stewart<br>Chief Magistrate Judge Dustin B. Pead |

Plaintiff Lisa Graham, by and through her undersigned counsel, hereby submits this Motion for Summary Judgment, pursuant to Fed. R. Civ. P. 56. For the reasons stated below, the Court should grant summary judgment in favor of Ms. Graham and set a trial on damages.

# TABLE OF CONTENTS

INTRODUCTION AND RELIEF REQUESTED ........................................................................... 4
UNDISPUTED MATERIAL FACTS ......................................................................................... 4
LEGAL STANDARD ................................................................................................................ 9
ARGUMENT…........................................................................................................…..........10
   I. The Undisputed Facts Establish a Prima Facie Case of Retaliation .................................... 10
      a. **Ms. Graham Engaged in Protected Activity** ................................................................ 10
      b. **Bristol Subjected Ms. Graham to an Adverse Employment Action** ........................ 11
      c. **The Undisputed Facts Demonstrate a Causal Connection Between the Protected Activity and Adverse Employment Action** ...................................................................... 11
   II. Bristol Cannot Meet Its Burden ............................................................................................ 13
   III. **The Undisputed Facts Show Bristol's Reason for Terminating Ms. Graham was Pretext** ………………………………………………………………………..…………...13
      a. **Ms. Graham was Terminated Contrary to Company Policy and Practice**............ 14
      b. **Defendant Conducted an Inadequate Investigation** ................................................. 16
CONCLUSION.................................................................................................................................. 18

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Coors Brewing Company,* 181 F.3d 1171 (10th Cir. 1999) ...................................... 10
*Bertsch v. Overstock.com,* 684 F.3d 1023 (10th Cir. 2012)……………………….……10, 12, 13
*Bhatia v. 7-ELEVEN Southland, Corp.,* No. 2:08-CV-987-CW (D. Utah Sep. 27, 2011) ............ 11
*Doebele v. Sprint/United Mgmt.,* 341 F.3d 1117 (10th Cir. 2003)……………………………….14
*Fassbender v. Correct Care Solutions, LLC,* 890 F.3d 875 (10th Cir. 2018)……………………13
*Foster v. Mountain Coal Co.,* 830 F.3d 1178 (10th Cir. 2016)…………………………………..11
*Fye v. Oklahoma Corp. Commission*, 516 F.3d 1217 (10th Cir. 2008) ......................................... 10
*Jachim v. KUTV Inc.*, 783 F. Supp. 1328 (D. Utah 1992) ............................................................... 9
*Kelley v. Albuquerque,* 542 F.3d 802 (10th Cir. 2008) ................................................................. 11
*Kendrick v. Penske Transp. Services., Inc.,* 220 F.3d 1220 (10th Cir. 2000) ........................... 9, 14
*Kline v. Utah Anti-Discrimination & Labor Division*, 418 F. App'x 774 (10th Cir. 2011) .......... 13
*Meiners v. Univ. of Kan.*, 359 F.3d 1222 (10th Cir. 2004) ........................................................... 10
*Proctor v. United Parcel Service,* 502 F.3d 1200 (10th Cir. 2007) .............................................. 12
*Rocky Mountain Prestress, LLC v. Liberty Mut. Fire Ins. Co.*, 960 F.3d 1255 (10th Cir. 2020) .... 9
*Smothers v. Solvay Chems.*, Inc. 740 F.3d 530 (10th Cir. 2014) ............................................ 16, 17
*Vitkus v. Beatrice Co.*, 11 F.3d 1535 (10th Cir. 1993) .................................................................... 9
*Wells v. Colorado Dept. of Transp*, 325 F.3d 1205, (10th Cir. 2003) .................................... 11, 12

**Statutes**

42 U.S.C. § 2000e-3(a). ................................................................................................................. 10

**Rules**

Fed. R. Civ. P. 56(a) ........................................................................................................................ 9
Fed. R. Civ. P. 56(c) ........................................................................................................................ 9

## INTRODUCTION AND RELIEF REQUESTED

Bristol Hospice Holdings ("Bristol") terminated Ms. Graham on July 13, 2018—just one month after the Utah Antidiscrimination and Labor Division ("UALD") notified the parties that Ms. Graham's charge of discrimination had been withdrawn. The evidence shows Ms. Graham has established a prima facie case of retaliation in violation of Title VII, Bristol has not provided a legitimate basis for Ms. Graham's termination, and the reason it provided is clearly pretextual. For these reasons, Ms. Graham asks that the court grant Summary Judgment in Ms. Graham's favor on her Title VII retaliation claim.

## UNDISPUTED MATERIAL FACTS

1. On December 28, 2015, Lisa Graham was hired by Bristol as a temporary employee through a third-party staffing agency. Ex. 1 (30(b)(6) Depo), 120:20-23; Ex. 2 (Graham Depo), 37:18-20.

2. Ms. Graham became a full-time HR Benefits Generalist for Bristol Hospice on April 1, 2016. Ex. 1, 120:13-121:6; Ex. 3 (Graham Offer Letter).

**Ms. Graham's Performance During Her Employment**

3. While working at Bristol Hospice, Ms. Graham received two performance evaluations:

    a. First, Ms. Graham received a 90-day introductory period evaluation on June 1, 2016, indicating her performance "meets expectations." Ex. 4 (Graham Evaluation); Ex. 1, 126:3-19.

    b. Ms. Graham also received an annual performance evaluation on April 1, 2017, indicating her performance "exceeds expectations." Ex. 5 (Graham Evaluation 2); Ex. 1, 126:3-10; *Id*. at 127:9-16.

**Protected Activity and Retaliation**

4. In March of 2018, Ms. Graham filed a charge of discrimination with the UALD claiming Bristol employees Debra Wertz and Sandy Dayton treated her differently based on her age and gender. The Charge also alleged that she was being retaliated against for making complaints of a hostile work environment. Ex. 6 (Charge of Discrimination).

5. Ms. Wertz felt that the allegations Ms. Graham stated in her charge about the way Ms. Wertz and Ms. Dayton treated her "just plain wasn't true" and/or were "ludicrous." Ex. 1, 184:4-185:9.

6. On April 24, 2018, the parties, including Ms. Graham and Ms. Wertz attended a mediation to attempt to resolve Ms. Graham's Charge of Discrimination. The mediation was not successful. Ex. 2, 109:7-10.

7. Several days later, Ms. Graham expressed to Ms. Wertz her desire to withdraw the claim if they could move forward in good faith and resume their working relationship. Ex. 1, 188:22-191:4; Ex. 2, 108:22-110:11.

8. On April 30, 2018, based on her discussion with Ms. Wertz, Ms. Graham filled out a request with the UALD to withdraw her charge of discrimination. Ex. 7 (Request for Withdrawal); Ex. 2, 110:12-15.

9. On June 7, 2018, notice was sent to Ms. Graham and Bristol that Ms. Graham's Charge of Discrimination was withdrawn. Ex. 8 (Notice of Withdrawal).

10. Just over a month later, on July 13, 2018, Ms. Wertz terminated Ms. Graham. Ex. 9 (Termination Letter).

**Proffered Reason for Termination**

11. In the summer of 2018, Bristol was in the process of acquiring another company called Optimal Hospice. Ex. 2, 112:24-113:7.

12. On July 10 and 11, 2018, Bristol hosted the HR team from Optimal. Ex. 10 (Optimal Itinerary).

13. At this time, the acquisition had not gone through yet, and would not be completed for another month or so. Ex. 1, 206:23-207:25.

14. Initially, Ms. Graham was scheduled to provide training for two hours on "benefits process, Paylocity, etc." to Faith Myers, a member of the Optimal HR team, on July 11, 2018. Ex. 10; Ex. 2, 116:9-117:11.

15. However, on July 10, 2018, Ms. Wertz decided at the last minute to have Ms. Graham start her training with Ms. Myers. Ex. 2, 129:18-130:3.

16. Ms. Wertz testified that on July 11, 2018, Ms. Myers reported that she had not received any training from Ms. Graham the day prior. Ex. 1, 199:13-202:12.

17. On July 11, 2018, Ms. Wertz emailed Ms. Graham and Ms. Dayton, requesting that they "provide [her] a summary of the training [they] provided to (Optimal) during their visit over the last couple of days." Ex. 11.

18. Ms. Graham responded to Ms. Wertz email on July 12, 2018, stating that she provided training to Ms. Myers on benefits, workers' compensation, FMLA processes, and briefly reviewed Paylocity. Ms. Graham stated she had not been able to provide a complete training on Paylocity, because Ms. Wertz cancelled the July 11, 2018, training last minute. Ex. 11 (Email re: Training); Ex. 12 (Graham Notes re: Training); Ex. 2, 139:7-140:2.

19. Ms. Wertz testified that she sent this response to Ms. Myers via email and in an email back, Ms. Myers again denied receiving any training. Ex. 1, 199:13-202:12; 203:11-22. Bristol, however, did not produce an email from Ms. Wertz to Ms. Myers about the July 10 training, or an email back from Ms. Myers. Ex. 1, 204:14-18.

20. Ms. Wertz testified that she terminated Ms. Graham after she received the response from Ms. Myers stating the training did not happen, because Ms. Wertz believed Ms. Graham failed to provide this training and then lied about it. *Id*., 206:5-18.

21. However, Ms. Wertz also testified that she only asked Ms. Graham to provide, by email, a list of the training she had done (Ex. 13, Department of Workforce Services Transcripts, Graham 0017), she did not interview Ms. Graham regarding the accusations prior to termination (*Id*., at Graham 0018-19), and there was no formal investigation done (*Id*., at Graham 0019). Also, as stated above, no email from Ms. Wertz to Ms. Myers about the training exists, nor does any email from Ms. Myers to Ms. Wertz.

22. Ms. Wertz testified that the statement from Ms. Myers (among others) that were produced in this litigation were created at Ms. Wertz's request, in response to Ms. Graham's application for unemployment benefits, which was obviously after Ms. Graham's termination. Ex. 1, 219:15-220:20.

23. Ms. Wertz also testified in the DWS hearing that she was unaware of Ms. Graham having ever misrepresented anything or having a problem like this in the past. Ex. 13, at Graham 0013.

**Bristol Hospice Policies**

24. Bristol has a policy and general practice of implementing a progressive discipline process. Ex. 14 (Corrective Action Policy), p. 1 ("Although Bristol is an at-will employer,

7

it attempts to correct or to improve job performance by applying a consistent approach of counseling and warning procedures."); Ex. 1, 98:7-23.

25. This process requires a verbal warning, counseling, a written warning, suspension or final warning, and then termination. Ex. 14, pp. 2-4; Ex. 1, 68:9-14.

26. However, Ms. Graham was terminated without following the progressive discipline policy. In fact, prior to her termination, Ms. Graham had never been written up or put on a performance improvement plan during her tenure at Bristol. Ex. 13, Graham 0017 (Debra Wertz Testimony during DWS hearing) (Ms. Graham: "And you agree that I was never written up before, verbally, or in writing, and was never on a work progression plan of any sort during my two and a half years at Bristol?" Ms. Wertz: "Yes, I agree with that."); Ex. 2, 193:17-194:4.

27. Ms. Wertz testified that Bristol may skip the progressive discipline process and go straight to termination for egregious situations. Ex. 1, 52:7-53:1.

28. However, Ms. Wertz could only recall two examples of egregious conduct that had resulted in Bristol not following its progressive discipline policy:

   a. First, a supervisor was found to have been having a relationship with his subordinate and the supervisor had given the subordinate a pay raise because of the relationship. Ex. 1, 79:5-22; *Id*., at 213:5-214:4. Ms. Wertz testified they would have terminated the supervisor if he had not resigned first. *Id*.

   b. Next, a nurse was caught giving another employee an enema in a vacant room of the nursing home. *Id*., at 213:5-22. Both employees were terminated without following the progressive discipline policy. *Id*.

29. Bristol has a written policy providing, "The employee should be given an opportunity to explain his or her actions. The employee's explanation should be verified and taken into consideration before corrective action is taken." Ex. 14, p. 1.

30. Ms. Wertz testified that she put that paragraph in the policy, because she "felt like the [employees] should be given the opportunity to [] give their side of the story. Ex. 1, 64:24-65:1.

31. Despite this policy, Ms. Graham was not given the opportunity to address the allegations prior to her termination. Ex. 13, Graham 0017; Ex. 2, 155:5-23.

## **LEGAL STANDARD**

Under Rule 56, "the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under Rule 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also *Jachim v. KUTV Inc.*, 783 F. Supp. 1328, 1330 (D. Utah 1992). In applying the summary judgment standard, the Court views the evidence and draws all reasonable inferences in favor of the nonmoving party. *Kendrick v. Penske Transp. Services., Inc.,* 220 F.3d 1220, 1225 (10th Cir. 2000). "For there to be a genuine dispute of fact, there must be more than a mere scintilla of evidence." *Rocky Mountain Prestress, LLC v. Liberty Mut. Fire Ins. Co.*, 960 F.3d 1255, 1259 (10th Cir. 2020) (citing *Vitkus v. Beatrice Co.*, 11 F.3d 1535, 1539 (10th Cir. 1993), internal quotation marks omitted). Viewing the facts in the light most favorable to Bristol, Ms. Graham is entitled to judgment as a matter of law.

# **ARGUMENT**

Under Title VII, it is illegal for an employer to take an adverse action against an employee in retaliation for making a complaint of discrimination. 42 U.S.C. § 2000e-3(a). Title VII retaliation claims supported by circumstantial evidence are subject to the *McDonell Douglas* burden shifting analysis. *Bertsch v. Overstock.com,* 684 F.3d 1023, 1028 (10th Cir. 2012). Under this analysis, the plaintiff has the initial burden of establishing a prima facie case of retaliation. *Id*. The burden then shifts to the employer to proffer a legitimate nonretaliatory reason for the adverse action. *Id*. If the employer meets this burden, then the burden shifts back to the plaintiff to "show that the employer's reason was a mere pretext for retaliation." *Id*., at 1028-29.

## I. The Undisputed Facts Establish a Prima Facie Case of Retaliation

To establish a prima facie case of retaliation: a plaintiff must show that 1) they engaged in protected activity; 2) they were subjected to an adverse employment action; and 3) there is a causal connection between their protected activity and the adverse employment action. *Fye v. Oklahoma Corp. Commission*, 516 F.3d 1217, 1227 (10th Cir. 2008) (quoting *Meiners v. Univ. of Kan.*, 359 F.3d 1222, 1229 (10th Cir. 2004).

### a. Ms. Graham Engaged in Protected Activity

Opposing discrimination prohibited by Title VII is protected activity, including filing a formal charge. *Fye,* 516 F.3dat 1228. Here, it is undisputed that Ms. Graham filed a Charge of Discrimination with the UALD claiming she had been subject to age and gender discrimination by Ms. Wertz and Ms. Dayton, which created a hostile work environment at Bristol. Ex. 6. There is no dispute that Ms. Graham engaged in protected activity.

### b. Bristol Subjected Ms. Graham to an Adverse Employment Action

In order to be an adverse action for purposes of Title VII, "the employer's conduct must be 'materially adverse' to the employee's job status." *Wells v. Colorado Dept. of Transp*, 325 F.3d 1205, 1212-13 (10th Cir. 2003). Termination is materially adverse to an employee's job status and clearly qualifies as an adverse action. *Anderson v. Coors Brewing Company,* 181 F.3d 1171, 1178 (10th Cir. 1999). It is undisputed that Bristol terminated Ms. Graham on July 13, 2018. Ex. 9. Thus, Ms. Graham has established the second element of a prima facie case of retaliation.

### c. The Undisputed Facts Demonstrate a Causal Connection Between the Protected Activity and Adverse Employment Action

Temporal proximity alone can establish causation when the protected activity is very closely followed by an adverse action. *Id,* at 1179. The Tenth Circuit has held that, for instance, temporal proximity of one and a half months is sufficient to establish causation by itself. *Foster v. Mountain Coal Co.,* 830 F.3d 1178, 1191 (10th Cir. 2016).

Here, Ms. Graham filed her Charge of Discrimination on March 3, 2018. Ex. 6. On April 24, 2018, the parties attempted mediation to resolve the Charge but were unsuccessful. Shortly after, Ms. Graham approached Ms. Wertz about dropping her charge of discrimination. Ex. 1, 188:22-191:4; Ex. 2, 108:22-110:11. The parties agreed to move forward in good faith. *Id*. On April 30, 2018, Ms. Graham requested that the UALD withdraw her charge of discrimination. Ex. 7. On June 7, 2018, the parties received notice that Ms. Graham's Charge of Discrimination had been withdrawn. Ex. 8. Just over one month later, on July 13, 2018, Bristol terminated Ms. Graham. Ex. 9.

Engaging in mediation is a protected activity under Title VII. *Kelley v. Albuquerque,* 542 F.3d 802, 816 (10th Cir. 2008); *see also Bhatia v. 7-ELEVEN Southland, Corp.,* No. 2:08-CV-987-CW, at *6 (D. Utah Sep. 27, 2011). Bristol terminated Ms. Graham less than three months

after she participated in mediation. Additionally, Bristol terminated Ms. Graham less than a month after it received notice that her Charge was withdrawn. These facts support an inference of retaliatory animus. The notice gave Bristol a "green light" to retaliate since Ms. Graham no longer had a pending Charge of Discrimination. And a "close temporal relationship is made even loser by the fact that the adverse action occurred at the first actual opportunity to retaliate." *Summa v. Hofstra University,* 708 F.3d 115, 128-29 (2d Cir. 2013); *see also, Espinal v. Goord,* 558 F.3d 119, 129 (2d Cir. 2009) (finding "the passage of only six months between the dismissal of Espinal's lawsuit and an allegedly retaliatory beating by officers, one of whom [] was a defendant in the prior lawsuit, is sufficient to support an inference of a causal connection" because "[i]t is plausible that the officers waited to exact their retaliation at an opportue time . . . .")

However, Ms. Graham need not rely on temporal proximity alone to establish causation. In addition to temporal proximity, a pretextual reason for termination is also evidence of causation. *Proctor v. United Parcel Service,* 502 F.3d 1200, 1209 (10th Cir. 2007), citing *Wells,* 325 F.3d at 1218; *Bertsch v. Overstock.com,* 684 F.3d 1023, 1029 (10th Cir. 2012) (finding error in district court's refusal "to consider pretext in determining there was no evidence of causal connection between her complaints . . . and her termination, contrary to *Proctor . . . ."*). As explained below, the undisputed facts demonstrate that no reasonable jury could give Bristol's proffered reason for terminating Ms. Graham any credence. When, as here, the employer's proffered reason for the adverse action is false, that is evidence the employer lied to conceal a retaliatory motive. *Wells,* 325 F.3d at 1218. Therefore, Ms. Graham can establish a prima facie case of retaliation.

## II. Bristol Cannot Meet Its Burden

Because Ms. Graham can establish a prima facie case of retaliation, the burden shifts to the employer to proffer a "legitimate, nonretaliatory reason" for the adverse action. *Bertsch,* 684 F.3d at 1029. Bristol cannot meet its burden, because the emails Ms. Wertz claims she sent to and received from Ms. Myers that she claims were the impetus for Ms. Graham's termination do not exist. Specifically, Ms. Wertz claims she forwarded Ms. Graham's email about the training to Ms. Myers and in an email back, Ms. Myers denied receiving any training. Ex. 1, 199:13-202:12; 203-206. Ms. Wertz claims she terminated Ms. Graham after she received the response from Ms. Myers stating Ms. Graham did not train her on July 10, 2018. *Id.* But there is no such email, and Ms. Wertz admitted that the statement from Ms. Myers produced in this litigation was created in response to Ms. Graham's unemployment claim. Ex. 1, 219:15-220:20. So Bristol cannot demonstrate it had a legitimate, nondiscriminatory reason for terminating Ms. Graham, and Ms. Graham is therefore entitled to summary judgment.

## III. The Undisputed Facts Show Bristol's Reason for Terminating Ms. Graham was Pretext

Even assuming Bristol met its burden of showing it had a legitimate basis for terminating Ms. Graham, the evidence of pretext in this case is such that no reasonable jury could believe Bristol's reasons, so Ms. Graham is entitled to summary judgment on this basis as well. *See, e.g., Fassbender v. Correct Care Solutions, LLC,* 890 F.3d 875, 878, 891 (10th Cir. 2018). "A plaintiff can demonstrate pretext by showing weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's reasons for its action which a reasonable factfinder could rationally find unworthy of credence." *Kline v. Utah Anti-Discrimination & Labor Division*, 4 F. App'x 774, 784 (10th Cir. 2011) (quoting *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997)) (cleaned up).

Here, Ms. Wertz testified that she terminated Ms. Graham because of an allegation that Ms. Graham failed to provide the training she was required to do and then lied about it. Ex. 1, 199:13-202:12. However, the undisputed facts—including Ms. Wertz's own testimony—negates this proffered reason. First, as stated above, the emails Ms. Wertz claims she relied on in terminating Ms. Graham do not exist, which in and of itself demonstrates the weakness of Bristol's position. Further, Ms. Graham has testified that she did in fact provide the training to Ms. Myers. Ex. 2, 139:7-140:2; Ex. 11; Ex.12. Ms. Graham also testified that she was not able to complete all the Paylocity training because Ms. Wertz cancelled the training and not because Ms. Graham chose not to do it. Ex. 2, 139:7-140:2. Despite Ms. Graham providing Ms. Wertz with a list of the training she had given, Ms. Wertz determined that Ms. Graham was lying. Ex. 11; Ex. 12; Ex. 1, 199:13-202:12. However, Ms. Wertz did not even speak with Ms. Graham about the situation. Ex. 13, at GRAHAM 0018- 9. She did "no investigation." *Id.,* at GRAHAM 0019. Further, Ms. Wertz testified that she was unaware of Ms. Graham misrepresenting anything in the past. *Id*, at Graham 0013. Ms. Wertz also testified, in the DWS hearing, that Ms. Graham had never had a problem like that before. *Id*. Nevertheless Ms. Wertz took the word of an individual she barely knew (and who was not an employee of Bristol) over the word of Ms. Graham. Ex. 1, 199:13-202:12. These undisputed material facts show both contradictions and weaknesses in Defendant's proffered reason for termination to establish pretext.

    **a. Ms. Graham was Terminated Contrary to Company Policy and Practice**

A plaintiff may also show pretext "evidence that the defendant acted contrary to a written company policy prescribing the action to be taken by the defendant under the circumstances." *Kendrick,* 220 F.3d at 1230. Similarly, the "procedural irregularities" involved in a termination suggest pretext. *Doebele v. Sprint/United Mgmt.,* 341 F.3d 1117, 1138 n. 11 (10th Cir. 2003).

14

Here, Bristol had both a written policy and practice of following a progressive discipline process when disciplining its employees. Ex. 14, p. 1; Ex. 1, 98:7-23. Only in instances of egregious misconduct could or did Bristol deviate from that policy. Ex. 1, 52:7-53:1. Despite this policy and practice, Ms. Graham was terminated without having ever been issued a written warning or put on a performance improvement plan, either for this allegation or any other disciplinary issues. Ex. 13, Graham 0017; Ex. 2, 193:17-194:4.

Additionally, Ms. Graham's situation is different from other situations where the progressive discipline process was not followed. Ms. Wertz testified that Bristol may not follow the progressive discipline policy when the conduct was egregious. Ex. 1, 52:7-53:1. Besides Ms. Graham, Ms. Wertz testified there was only two other occasions on which Bristol did not follow its progressive discipline policy. The first was a supervisor who was in a romantic relationship with his subordinate and had given the subordinate a pay raise because of their relationship. *Id*. at 79:5-22; 213:5-214:4. Although this employee ultimately resigned, Ms. Wertz testified they would have terminated him without following the progressive discipline policy. *Id*. The only other example of Ms. Wertz was able to give was a nurse that was found giving another employee an enema in a vacant room in a nursing home. *Id*. at 213:5-22. Both the employee giving the enema and the one receiving it were terminated. *Id*. In both these examples, it was clearly established that the terminated employee committed the offenses that lead to their terminations. It was never established that Ms. Graham did not provide training or that she lied about providing training; in fact, there is evidence to the contrary.

Even assuming that Ms. Graham had in fact failed to provide the training and then lied about it—which she disputes—such misconduct is not of such an egregious nature that it would justify deviating from the written policy and practice of progressive discipline. The only two

15

other instances in which Bristol terminated employees without providing progressive discipline—the supervisor who had a sexual relationship with a subordinate and the two employees engaging in recreational enemas on company time—involved misconduct in a whole different ballpark than what Ms. Wertz accused Ms. Graham of. Given these undisputed facts, no reasonable jury could conclude that Bristol's termination of Ms. Graham without following its progressive discipline policy was legitimate.

Furthermore, Defendant had a written policy to give employees "an opportunity to explain his or her actions" and that such explanations "should be . . . taken into consideration before corrective action is taken." Ex. 14, p. 1. Ms. Graham was not made aware of the allegations against her prior to being terminated. Ex. 13, Graham 0017; Ex. 2, 155:5-23. And she had no opportunity to address the accusation against her. *Id*. Ms. Wertz also testified in the DWS hearing that Ms. Graham was not given an opportunity to respond to the allegations beyond Ms. Wertz's initial inquiry into what training Ms. Graham provided. Ex. 13, Graham 0015. Based on the foregoing material facts, it is clear Bristol acted contrary to its own written policies and practices and engaged in "procedural irregularities" when it terminated Ms. Graham without following its progressive discipline policy. These facts are undisputed and establish that Bristol's proffered reason for terminating Ms. Graham was pretext.

  **b. Defendant Conducted an Inadequate Investigation**

"A failure to conduct what appeared to be a fair investigation of the violation that purportedly prompted adverse action may support an inference of pretext." *Smothers v. Solvay Chems.*, In 740 F.3d 530, 542 (10th Cir. 2014) (internal quotations and citations omitted). In *Smothers*, the Tenth Circuit found sufficient evidence of pretext when one employee, who was terminated because of an altercation with another employee, was not given a fair investigation.

*Id*. at 542-43. There, the court found that multiple decision makers personally spoke to the other employee about his version of events and relied on that version in making their decision. *Id*. at 542. However, none of the decision makers ever heard the version of events from the employee who was terminated. *Id*. The court stated,

> The decision makers ultimately relied on one-sided information and accepted Mr. Mahaffey's allegations and negative characterizations of Mr. Smothers' behavior. If [Defendant's] decision makers had allowed Mr. Smothers to respond to Mr. Mahaffey's allegations before they fired him, we could perhaps accept that [Defendant] found Mr. Mahaffey's version of event more credible. But we must examine the facts as they appear to the people making the decision.

*Id*. at 542-43 (internal quotations and citations omitted). Ultimately, the court found that "a reasonable juror could find . . . [the] investigation into the quarrel . . . was not fair or adequate." *Id*. at 543.

Similarly, Ms. Graham was never given an opportunity to explain her version of events regarding the training with Ms. Myers, beyond being asked what training she provided. Ex. 13, Graham 0017. Ms. Graham was not even made aware of the accusations against her until she was terminated. Ex. 2, 155:5-23. Furthermore, Ms. Wertz testified that she did not conduct a formal investigation. Ex. 13, Graham 0019. Like in *Smothers*, Ms. Wertz failure to get Ms. Graham's version of events prevents Ms. Wertz from credibly asserting she determined Ms. Myers version of events to be more credible and shows pretext.

Based on the undisputed facts, Defendant's proffered reason for terminating Ms. Graham was pretextual—so much so that a reasonable jury could not find in Defendant's favor, even assuming Bristol met its burden of offering a legitimate, nonretaliatory reason for her termination. Therefore, the court should grant Ms. Graham's Motion for Summary Judgment.

## CONCLUSION

For the foregoing reasons, the court should grant Plaintiff's Motion for Summary Judgment on her Title VII Retaliation claim, and this Court should set a trial to determine Ms. Graham's damages.

DATED this 17th day of May, 2024.

**HOLLINGSWORTH LAW OFFICE, LLC**

/s/ April L. Hollingsworth
April L. Hollingsworth
Katie Panzer
*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on 17th day of May, 2024, a copy of **PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** was served, via the court's electronic filing system, on the following:

Ryan B. Frazier
Michal D. Johnston
Christopher M. Sanders
KIRTON McCONKIE
rfrazier@kmclaw.com
mjohnston@kmclaw.com
csanders@kmclaw.com

/s/ April L. Hollingsworth