

Share                     Login

**00:00**

☐                    *replay_5*                    **1x**
                                                    Speed

**Ms. Graham**

This is Lisa.

**Judge Romo**

Yes, my name is Judge Romo. I'm with the Department of Workforce Services. Calling about the unemployment hearing today.

**Ms. Graham**

Okay.

**Judge Romo**

Can you participate now?

**Ms. Graham**

Yes I can.

**Judge Romo**

All right. Now, I have listed as your witness Lisa Anderson, but then I saw a note from Judge Hawkins that she's not planning on participating.

**Ms. Graham**

Well, the thing is, she had a funeral at 11:30, and then she also said she didn't really want to be involved. So it was like either I subpoena her or ... But she is an eyewitness to the situation.

**Judge Romo**

So but she's not going to ... Right now I'm not calling her. Is that right?

GRAHAM 0001

**Ms. Graham**

Yeah. Absolutely. Yeah.


**Judge Romo**

All right. So I'm going to put you on hold so I can get the employer on the line.


**Ms. Graham**

Thank you very much.


**Judge Romo**

All right.


**Ms. Graham**

Okay.


**Judge Romo**

We have nasty hold music, try not to let it drive you [crosstalk 00:01:20]


**Ms. Graham**

I'll do it.


**Ms. Wertz**

Human Resources, this is Debbie.


**Judge Romo**

Yes, my name is Judge Romo. I'm with the Department of Workforce Services, Appeals Division. I have Elizabeth Graham on the phone with me. Calling about the unemployment hearing today.


**Ms. Wertz**

Okay.


**Judge Romo**

Can you participate now?

GRAHAM 0002

**Ms. Wertz**

I sure can.

**Judge Romo**

All right. What I'm going to do is read an opening statement into the record. Before I do that, though, ma'am, I did have a conversation, a little conversation with Ms. Graham when I first called her. She had listed a witness but there was a note indicating that witness would not be participating, so I just verified that with her. Ms. Graham, we did not talk about the merits of the case. Do you agree?

**Ms. Graham**

Yes. We didn't talk about it.

**Judge Romo**

Okay. All right then. Let me go ahead and read the opening statement. On the record in the matter of Elizabeth A. Graham and Bristol Hospice, LLC. Case number 18-A-04175. This is a telephonic hearing being held on August 22nd, 2018. My name is Janet Romo. I'm the judge holding the hearing today. As required by law, this hearing is being recorded and I'll be taking testimony under oath. If either party decides to appeal my decision, the recording that we make today would simply be reviewed. You won't have another hearing, so it's important that you tell me everything you need to during the hearing today.

**Judge Romo**

The claimant filed a timely appeal of the department decision that denied benefits and relieved the employer of charges on the grounds she was discharged for just cause. The record will show that the claimant, Elizabeth A. Graham, is participating via telephone. Ms. Graham, anyone else with you today?

**Ms. Graham**

No.

**Judge Romo**

The employer, Debra Wertz, is also participating via telephone. Ms. Wertz, anyone else participating with you?

**Ms. Wertz**

GRAHAM 0003

No.

## Judge Romo

The issue before me today whether or not Ms. Graham was discharged for just cause. In a discharge, the employer has the burden to show just cause to deny benefits. If it becomes apparent to me that this is a quit and not a discharge, then the burden would shift to Ms. Graham to show good cause for quitting, or that she meets the requirements for an allowance of benefits under the equity and good conscience provisions of the law. I may look at whether or not the work was suitable. I will determine whether or not to charge the employer's account for the cost associated with the claim.

## Judge Romo

Now I'm an active participant in the hearing. What that means is that I ask the questions I need to to get the information I need to make my decision. Neither party's going to have to give me a big presentation or anything like that. I will place both parties under oath. I will start with the employer's testimony first. Ms. Wertz, I will ask you questions about why Ms. Graham is no longer working for the company. I'll let you tell me anything you think I need to know. Ms. Graham, you may ask questions of Ms. Wertz. Am I saying your name correctly, ma'am?

## Ms. Wertz

Yes, you are.

## Judge Romo

All right. And then Ms. Graham, I'll take testimony from you. I'll let you tell me anything you think I need to know. Ms. Wertz, you may ask questions of Ms. Graham, and you'll all get a decision letter from me within a week. Ms. Graham, any questions before we begin?

## Ms. Graham

No. So I'm just listening to Ms. Wertz.

## Judge Romo

For right now.

## Ms. Graham

Okay.

## Judge Romo

But think about the questions you want to ask her if you need to have some clarification. Then I'll let you provide your testimony and she can ask questions of you.

## Ms. Graham

Okay. Great. Thank you.

## Judge Romo

Ms. Wertz, any questions before we begin?

## Ms. Wertz

No.

## Judge Romo

Prior to the hearing, you should've received copies of the Exhibits. Before I get into the Exhibits, let me go ahead and place you both under oath. Do you swear or affirm that the testimony you're about to give is the truth, the whole truth, and nothing but the truth? Ms. Graham?

## Ms. Graham

Yes.

## Judge Romo

How about you, Ms. Wertz?

## Ms. Wertz

Yes.

## Judge Romo

Prior to the hearing, you should've received copies of the Exhibits. They would've come with the hearing notice. Ms. Graham, did you receive those documents?

## Ms. Graham

Yes, I did.

GRAHAM 0005

**Judge Romo**

Did you have a chance to look through them?

**Ms. Graham**

I did.

**Judge Romo**

I received additional documents from you, Ms. Graham. Did you provide copies of those documents to the employer?

**Ms. Graham**

Yes, I did.

**Judge Romo**

Ms. Wertz, did you receive copies of the documents sent to you by the department?

**Ms. Wertz**

Yes, I did.

**Judge Romo**

Did you have a chance to review those?

**Ms. Wertz**

Yes.

**Judge Romo**

Did you receive the documents sent to you by Ms. Wertz?

**Ms. Wertz**

You mean Ms. Graham?

**Judge Romo**

Or, excuse me, Ms. Graham. Yes.

**GRAHAM 0006**

**Ms. Wertz**

Yes.

**Judge Romo**

And did you have a chance to review those?

**Ms. Wertz**

Yes.

**Judge Romo**

Okay. What I'm going to do is describe the documents for the record. Exhibit number one, two, three, and four is a copy of the initial claim for benefits that was made effective July 15th, 2018. Exhibit number five and six say across the stop, Statement SP Separation Discharge. This is a copy of a form that you filled out online, Ms. Graham.

**Ms. Graham**

Mm-hmm (affirmative).

**Judge Romo**

It asks questions about why you were no longer working for the company. On the bottom of six, we have notes from phone conversation that the initial adjudicator had with you Ms. Graham. And those go all the way to Exhibit number seven, the notes from those conversations. Do you recall speaking to someone from the Department of Workforce Services, ma'am?

**Ms. Graham**

Yes, I do. And on Exhibit six, I notice that there's an error. Did you always [crosstalk 00:07:25]

**Judge Romo**

Okay, ma'am. I will let you testify when it's time for you to testify. Okay?

**Ms. Graham**

Okay.

**Judge Romo**

GRAHAM 0007

Just remember you need to tell me that.

### Ms. Graham

Okay.

### Judge Romo

Exhibit number eight and nine is a copy of the official notice of claim filed. This is a copy of the form sent to the employer requesting information on the reason for separation. Ms. Wertz, did you complete that?

### Ms. Wertz

I did.

### Judge Romo

And ten is a continuation of that. It looks like you wrote on the back.

### Ms. Wertz

That's correct.

### Judge Romo

11 and 12 is a type-written document. It gives additional information on the reason for separation and it is written on the Bristol Hospice letterhead. Ms. Wertz, did you write and sign that document?

### Ms. Wertz

I did.

### Judge Romo

Exhibit number 13 is a type-written document written by Faith Meyers. And it looks like there's a handwritten note, the summary of training Faith Meyers. Did you write that Ms. Wertz?

### Ms. Wertz

I did.

### Judge Romo

GRAHAM 0008

Exhibit number 14 is a copy of an email from Lisa Graham to Debra Wertz regarding optimal training. This is dated July 12th, 2018. And it's about training. And on there it's written, Response to Request for Summary of Training Lisa Graham. Did you write that Ms. Wertz?

Ms. Wertz

Yes.

Judge Romo

Exhibit number 15 is a type-written document written by Mia Warren. 16 is a type-written document written by Annette Disinger. Desinger. 17 and 18 is a type-written document. It's dated July 13th, 2018, and it's a letter of dismissal. Ms. Wertz, did you write that?

Ms. Wertz

Yes.

Judge Romo

Exhibit number 19 is a copy of an email from Ms. Wertz to Kelly Bidegard, Sandy Dayton, Lisa Payne, and Lisa Graham about the itinerary visit to Bristol office. And then it gives a listing of what is to take place on those days. Exhibit 20 contains the reasoning and decision of the initial adjudicator. 21 is a copy of the letter sent to Ms. Graham notifying her that her benefits have been denied and providing information regarding the right to appeal. 22 and 23 are a copy of an appeal that was filed online. Ms. Graham, are you the one that wrote that?

Ms. Graham

Yes I am. I did write that.

Judge Romo

All right. Now I'm going to give numbers to the documents sent in by Ms. Graham. Exhibit number 24 is a fax cover sheet.

Ms. Graham

It's correct.

Judge Romo

25 is a type-written document, or it's a copy of an email from Ms. Wertz dated July 2nd, 2018.

GRAHAM 0009

Ms. Graham

Exhibit 24 is actually an email from me to Ms. Wertz.


Judge Romo

No ma'am. I'm not using the document numbers that you had put on there. I'm using the document numbers that I put on there.


Ms. Graham

Okay.


Judge Romo

So 24 is the fax cover sheet. 25 is the email.


Ms. Graham

Okay.


Judge Romo

Exhibit number ... So that'll make it helpful if we get too lost. We can say Exhibit ... I can say the one you put Exhibit number 25 on. So that's still helpful. Exhibit number 26 is a copy of an email from Lisa Graham to Faith Meyers. 27 and 28 are, it looks like a type-written document giving information on the phone conference call with Faith Meyers Thursday, July 5th.


Ms. Graham

That's correct.


Judge Romo

Exhibit number 29 is another email from Lisa Graham to Debra Wertz. And it's talking about a conference call with Faith Meyers. 30, 31, 32, 33 is a type-written document. It's talking about the meeting with Faith Meyers. 34, 35, 36, 37, 38, 39, and 40 is a type-written document. This is Ms. Graham's response to the employer's [inaudible 00:12:14]. 41 is a listing of requests for subpoenas. All right. Ms. Graham, any objections to documents 1 through 41 going into the record?


Ms. Graham

No.

GRAHAM 0010

#### Judge Romo

How about you, Ms. Wertz?

#### Ms. Wertz

No.

#### Judge Romo

I'll accept documents 1 through 41 into the record. I do need to make it known that there was a discussion with Ms. Graham about the subpoena request. That was not with me. That was a Chief ALJ, Judge Hawkins. So I did not have that conversation with you Ms. Graham, is that correct?

#### Ms. Graham

That's correct.

#### Judge Romo

All right. So Ms. Wertz, let me have you tell me your full name and spell it, please ma'am.

#### Ms. Wertz

Okay. My full name is Debra Colleen Wertz. That's D-E-B-R-A C-O-L-L-E-E-N W-E-R-T-Z.

#### Judge Romo

And what is your position with the company?

#### Ms. Wertz

I'm the Executive Vice President of HR.

#### Judge Romo

How long have you had that position, ma'am?

#### Ms. Wertz

I've been with the company for six years. This actual job title I've been in for three years.

#### Judge Romo

GRAHAM 0011

Did Ms. Graham work for your company?

**Ms. Wertz**

She did.

**Judge Romo**

Do you know what her dates of employment were?

**Ms. Wertz**

I don't off the top of my head. I can look them up pretty quickly if you'd like.

**Judge Romo**

Let's see if we have an Exhibit that will help you. Sorry, I have to go backwards. It takes a little while. Let's look at Exhibit number eight. On the form you will out, Ms. Wertz, you indicated December 28, 2015 to July 13, 2018.

**Ms. Wertz**

That's correct.

**Judge Romo**

Did she have a job title?

**Ms. Wertz**

Yes. She was our HR Benefits Generalist.

**Judge Romo**

Did she work full or part-time?

**Ms. Wertz**

Full-time.

**Judge Romo**

And her rate of pay?

GRAHAM 0012

## Ms. Wertz

$27.39 an hour.

## Judge Romo

Was she terminated?

## Ms. Wertz

She was.

## Judge Romo

What was the final incident that caused her to be terminated?

## Ms. Wertz

Excuse me. She was directed to ... We had just acquired a company called Optimal. And she was directed to train her counterpart with that company. And it was reported to me that she did not provide the training. I asked her to please let me know what she ... Give me a summary of the training that she provided. She gave me a summary in writing, a short one, and when I talked to her counterpart, she said that it wasn't true.

## Ms. Wertz

And she also had expressed her displeasure about training that person to another employee here in the company. Which is what prompted me to ask that person, Faith Meyers, what had occurred in her training. And she had told me in all honesty that she didn't have any training. She was provided some documents and told to review them, but other than that there was no distinctive training. So when I reviewed the information that Lisa had provided as well as what Faith provided, I felt that Faith was more credible in that particular situation. I felt like Lisa was insubordinate in the fact that she didn't provide that training. And then on top of it, she misrepresented what was actually presented to that person. And so we terminated her for cause for those reasons.

## Judge Romo

Had she ever had a problem like this in the past?

## Ms. Wertz

No.

GRAHAM 0013

Judge Romo

Can you tell me why you felt that termination was appropriate, rather than say, I don't know, suspension or a written warning?

Ms. Wertz

The reason why I felt like it was prudent in this particular case was that I felt like she deliberately did not provide the training. And I felt like our company is in a really huge growth pattern and it was necessary for the person in her position to be able to provide that training. And I didn't have the confidence that she would be able to do it in the future. And so I felt the best course of action was to let her go.

Judge Romo

Okay. Had you let her know prior to the date that the training was to be given that she was supposed to be giving that training?

Ms. Wertz

Yes, I did.

Judge Romo

How much prior to that?

Ms. Wertz

We had a discussion, I believe it was around the 2nd. I might've put the 5th on this document. But we had a discussion about what the employees with the Optimal Hospice was currently doing and we talked about what her counterpart would be doing. To let her know that they were going to be coming in for training. Then on July 5th, I sent an email showing what the itinerary was going to be for the following week. And she was notified at that point the areas that she needed to train on.

Judge Romo

So would this lady have been doing exactly the same things that Ms. Graham was doing for the company?

Ms. Wertz

No. It would've been similar. She was managing the benefits for Optimal, but she was not working on our Paylocity system, which is what we go through for benefits. She was not doing FMLA or

GRAHAM 0014

LLAs. She was not doing workers comp. And then of course she wasn't doing the processes the way that Bristol does the processes.

### Judge Romo

Mm-hmm (affirmative). So what exactly did you want Ms. Graham to train her on?

### Ms. Wertz

I wanted her to train her on workers compensation. I wanted to train her on benefits, which would've included the Paylocity system. I wanted her to go over our FMLA processes. And so basically her entire position. I guess that's about as clear as I can make it.

### Judge Romo

Okay. And is there anything else you want to tell me about the separation from the company?

### Ms. Wertz

As far as the separation from the company, I know that Lisa has put into her information that she wasn't allowed an opportunity to respond to the allegations against her. From a verbal perspective, I would agree with that. However, I specifically asked her in writing to provide me with a summary of the training that she had provided and she did not do so. So I felt that particular time that it was fruitless to continue to just go over it again. I felt like she would just misrepresent what she had done again. So I just gave her her termination letter and let her go.

### Judge Romo

Okay. Anything else, ma'am?

### Ms. Wertz

Not at this point, no.

### Judge Romo

Ms. Graham, do you have any questions for this witness?

### Ms. Graham

Yes. So did you receive my email dated July 12th?

GRAHAM 0015

Judge Romo

Is there [crosstalk 00:21:33]

Ms. Wertz

I received an email on July 12th where you provided information about a phone call you had had with Faith on the 5th. Then I also received the statement that you made about the training that you had provided to Faith.

Ms. Graham

Okay, so did you receive my email July 12th with regard to Optimal training, it's Exhibit 14?

Ms. Wertz

Yes. As I just stated, I received that.

Ms. Graham

Okay. So in the first paragraph, in the first sentence, I said that prior to Optimal's visit I was scheduled to meet with Faith Meyers on 7/11/2018 from 9 am to 11 am for Paylocity training. Correct?

Judge Romo

Okay ma'am, you don't need to read it and ask her what is written on there. Okay?

Ms. Graham

Pardon me?

Judge Romo

Just ask her your question. You don't need to read her what it says and then ask her if that's what it says on there. I can look at the form and see what's written there.

Ms. Graham

Okay, got it. Okay. So basically I did indicate that Paylocity training, there was only [inaudible 00:22:42] training prior to the visit. Correct?

Ms. Wertz

Well, you indicated that you were scheduled to train on Paylocity on July the 11th. But that wasn't the only thing you were supposed to train on. You were also supposed to train on the benefits, workers compensation, FMLA, and so forth.

### Ms. Graham

In the second paragraph, I state that I met with Faith on 7/10/2018 in the afternoon and that I did go over ... I reviewed the workers comp, FMLA processes, and Bristol benefits.

### Judge Romo

Okay so Ms. Graham, you get to ask questions. That's it. You don't get to respond or argue with her answers. Okay?

### Ms. Graham

Got it.

### Judge Romo

So do you have another question for her?

### Ms. Graham

Did you give me an opportunity to defend myself against the accusations of the three misconducts that I was accused of during my termination?

### Ms. Wertz

As I stated before, I did not give you a verbal opportunity, but I did give you a written opportunity when I asked for the summary on what you had trained.

### Ms. Graham

And you agree that I was never written up before, verbally, in writing, and was never on a work progression plan of any sort during my two and a half years at Bristol?

### Ms. Wertz

Yes, I agree with that.

### Ms. Graham

GRAHAM 0017

Okay. Did you follow the HR manual guidelines on corrective action? Number BH-HR-0011?

**Ms. Wertz**

I don't have that in front of me.

**Ms. Graham**

Okay. Well, did you allow me and did you interview the employee, which would be me, at that point?

**Ms. Wertz**

I did not.

**Ms. Graham**

Okay. And did you follow the HR manual, BH guidelines on involuntary termination for cause? It's number BH-HR-0001. As far as-

**Judge Romo**

[crosstalk 00:25:03] okay, she doesn't have the manual in front of her, so tell her what you expected her to do.

**Ms. Graham**

To interview the employee. Yeah. [crosstalk 00:25:11]

**Judge Romo**

She's already answered that question. Do you have a different question to ask?

**Ms. Graham**

This was for involuntary termination for cause.

**Judge Romo**

Okay, but you need to explain what part you're asking her about, not just give numbers. She's already told you she doesn't have the manual in front of her. So what is [crosstalk 00:25:32]

**Ms. Graham**

GRAHAM 0018

It was number one. And it says, did you meet with the employee.

**Ms. Wertz**

Again, I did not meet with you prior, on this incident, prior to terminating you.

**Ms. Graham**

Okay.

**Ms. Wertz**

And I've explained the reason why.

**Ms. Graham**

When you were doing the investigation, you spoke to Annette Desinger, you spoke to Mia, and you spoke to Faith Meyers during the investigation. You investigated them. And they had the opportunity to speak to you and also in writing make their statement.

**Ms. Wertz**

So let me be clear on that. There was no investigation. The information that I had received came to me voluntarily from those particular individuals. At a later date, I did request that they put it in writing. But there was no formal investigation done on the matter.

**Ms. Graham**

Well, in your rationale for discharge-

**Judge Romo**

Again ma'am, you need to ask questions, not argue.

**Ms. Graham**

Okay. Okay. So on ... Let's see. Did you reach out to Faith Meyers to discuss the situation on July 11th?

**Ms. Wertz**

No. Faith Meyers came into a meeting, I asked her how her training went the day before, she said to be honest she didn't receive any training and it was very uncomfortable for her.

GRAHAM 0019

## Ms. Graham

Okay, so in Exhibit 11, it says I asked ... Okay. So as far as Mia goes, you did not initiate that conversation verbally with Mia either.

## Ms. Wertz

I did not. Mia came to me and told me that she felt like you were stalking her to get her contact information.

## Ms. Graham

Okay. During the meeting after the Bristol Optimal Crowder meeting, Mia handed me her ... Do you remember Mia handing me her business card?

## Ms. Wertz

No. No, and Mia reports that you had asked her three times for her contact information and she finally gave you her business card on the last day they were here.

## Ms. Graham

Did you give me the opportunity to provide further information other than the report of summary that I provided-

## Judge Romo

Ma'am, you've already asked that question in a different form. You don't get to ask it again, it's been answered.

## Ms. Graham

Okay.

## Judge Romo

Do you have another question?

## Ms. Graham

Yes. Well, I'm not quite sure about this, Judge. As far as Annette, Mia, and Faith's statements. Debbie, did you write those statements?

GRAHAM 0020

**Ms. Wertz**

No.

**Ms. Graham**

They were written by each of themselves.

**Ms. Wertz**

That's correct.

**Ms. Graham**

Okay. So I'm not quite sure, Judge, how I ask a question with regard to one of the discrepancies in the statement. Is that appropriate?

**Judge Romo**

What do you want to know?

**Ms. Graham**

Well, the Annette statement states that I came into her office at 9:30 on July 10th and I was-

**Judge Romo**

You're just going to have to testify about that, ma'am, you're not going to be able to ask her a question about what Annette wrote.

**Ms. Graham**

Okay. Okay. So as far as a discrepancy, I can't ... Well, I did request the subpoenaed witnesses but I wasn't allowed to get that, so I can't do that.

**Judge Romo**

Well, I mean you can testify that there's a discrepancy.

**Ms. Graham**

Yes. Okay, well-

GRAHAM 0021

**Judge Romo**

When it's your turn to testify.


**Ms. Graham**

Okay. Is it my turn to testify?


**Judge Romo**

Not yet.


**Ms. Graham**

Okay.


**Judge Romo**

I'll let you know when it's time for you to testify. Do you have any more questions for this witness?


**Ms. Graham**

No. I don't.


**Judge Romo**

Okay. So now let me get your testimony, ma'am. Tell me your full name and spell it, please.


**Ms. Graham**

Elizabeth, E-L-I-Z-A-B-E-T-H. Ann, A-N-N. Graham, G-R-A-H-A-M.


**Judge Romo**

Okay. And did you work for Bristol Hospice?


**Ms. Graham**

I did.


**Judge Romo**

What were your dates of employment?

GRAHAM 0022

**Ms. Graham**

I started December 28th, 2015 and through July 13th, 2018.


**Judge Romo**

Did you have a job title?


**Ms. Graham**

I did.


**Judge Romo**

What was it?


**Ms. Graham**

HR Benefits Generalist.


**Judge Romo**

Did you work full-time?


**Ms. Graham**

I did.


**Judge Romo**

What was your rate of pay?


**Ms. Graham**

$27.39 an hour.


**Judge Romo**

Were you terminated?


**Ms. Graham**

Yes, I was.

**Judge Romo**

Who terminated you?


**Ms. Graham**

Debbie Wertz.


**Judge Romo**

Did she tell you why you were being terminated?


**Ms. Graham**

Yes, she did.


**Judge Romo**

Why were you being terminated?


**Ms. Graham**

I was being terminated for three misconducts.


**Judge Romo**

Okay. What were they?


**Ms. Graham**

Insubordination.


**Judge Romo**

Okay.


**Ms. Graham**

Falsifying a report.


**Judge Romo**

Okay.


GRAHAM 0024

Ms. Graham

And negative conduct towards coworkers.

Judge Romo

Did she tell you how you'd been insubordinate?

Ms. Graham

She told me that I was insubordinate because I was asked to train a coworker and that I refused or failed to complete the direction.

Judge Romo

And did you train the coworker?

Ms. Graham

Yes I did.

Judge Romo

Did you train her on everything you had been asked to train her on?

Ms. Graham

I trained her on everything I was asked to train on except for Paylocity. Because Paylocity training was scheduled on Wednesday, July 11th, from 9 am to 11 am. And that training was canceled. By Debra Wertz.

Judge Romo

Who canceled it? Oh.

Ms. Graham

Debra Wertz canceled it in the Bridges Conference Center.

Judge Romo

So why would this Faith person say you hadn't trained her?

GRAHAM 0025

**Ms. Graham**

I have no idea why she would say that, especially when there are notes to indicate otherwise. And that she didn't take any notes during the meeting whatsoever.

**Ms. Graham**

I actually believe the three statements have been falsified. And that's why I requested that the persons listed would be subpoenaed. So that they could actually verify that they wrote those statements.

**Judge Romo**

Well, your subpoena request was denied. I don't see any reason for you to do the employer's job for it. The employer has the burden, not you.

**Ms. Graham**

Okay.

**Judge Romo**

Okay. So you think that ... What do you mean, you think it was falsified? Do you think that they didn't write it? That somebody else wrote it? What do you think? What are you thinking?

**Ms. Graham**

Well, I think it's possible that they didn't write it. It's possible that the communication was relayed and it was exaggerated. It was misrepresented. But there's so much in the three statements that are inaccurate that I have to wonder exactly how the three witness statements were created.

**Judge Romo**

I don't have any reason to disbelieve Ms. Wertz that they wrote them. I understand that you may disagree with them. Or not think that they're telling the truth. But I think it's a little bit of a jump to say that these were created by somebody else. Do you have any evidence to that fact?

**Ms. Graham**

Well, I think that they're in such ... For instance it's like Faith Meyers, we had a conversation on July 5th and she says that she was indicating that basically she's telling in her opinion what happened during that phone call and then I have notes that I took during that meeting actually, and have that documentation, and it indicates otherwise.

GRAHAM 0026

**Judge Romo**

Right. I understand. But you're alleging that somebody else created the documents. Do you have any evidence to that?

**Ms. Graham**

I'm saying that I suspect that. And that's why I would want a [crosstalk 00:37:04]

**Judge Romo**

But that doesn't even make any sense, ma'am. I understand that you disagree with the information in the documents. But why would somebody else create the document? That's going into some conspiracy theory. And at this point, you have shown no evidence of any conspiracy against you.

**Ms. Graham**

Well, it was just a suspicion because there was so much differences in what actually happened, from my point of view, with regard to their representation of what happened.

**Judge Romo**

Okay.

**Ms. Graham**

And there is no evidence that I have acted this way in the past.

**Judge Romo**

Right.

**Ms. Graham**

As far as insubordination, dishonesty, lying.

**Judge Romo**

Right.

**Ms. Graham**

Negative towards my coworkers. I mean there's no evidence in my past. There's been no verbal warnings, anything like that at all. So it's kind of like an opposite situation. It's like I'm saying how I

perceive at work and then there is a completely totally different representation given.

**Judge Romo**

Right. But sometimes we don't see ourselves as other people perceive us either.

**Ms. Graham**

I understand that.

**Judge Romo**

So I guess I'm just trying to figure out why you would basically say that the employer created these, Ms. Wertz created these, and these are not notes written by these ladies.

**Ms. Graham**

Well, I'm not saying that she created them. I'm saying that perhaps that these statements ... They weren't signed. They weren't signed statements by the individuals and I'm just saying I'm wondering if it was relayed in their [crosstalk 00:38:52]

**Judge Romo**

Well, her testimony was that they wrote them and I have no reason to disbelieve that.

**Ms. Graham**

Okay.

**Judge Romo**

Now I understand that you disagree with the information in that and that's fine. That's completely legitimate. I just didn't understand why you were making allegations that these were falsified documents.

**Ms. Graham**

It was a suspicion I had because they were so-

**Judge Romo**

Well, again, you see things from your perspective and they see things from theirs. So it could just be they don't look at your behavior the same way that you do.

GRAHAM 0028

**Ms. Graham**

Correct. And as far as the work notes that I made with regard to the July 5th conversation and the July 10th conversation, our July 10th meeting with Faith Meyers. It indicated that I did no training.

**Judge Romo**

Right.

**Ms. Graham**

In actuality, I did the training. And I went over the ... Pardon me?

**Judge Romo**

I said okay.

**Ms. Graham**

And it shows that I did go over the training in my notes. And in the areas of Bristol benefits and FMLA, LLA, and also in workers compensation.

**Judge Romo**

Okay.

**Ms. Graham**

So as far as me providing training with Faith on July 10th, I did that training. I reported in summary that training to Debra Wertz. And my notes of that training are provided. So that part of the training is, in my opinion, is evidenced that I did complete it. And then as far as the Paylocity training, the Paylocity training was the only training that was scheduled prior to the visit. And it was going to be done on Wednesday, July 11th from 9 am to 11 am.

**Judge Romo**

Right. You've already testified to this ma'am. I don't need you to repeat your testimony.

**Ms. Graham**

Okay. So as far as [crosstalk 00:40:58]

**Judge Romo**

GRAHAM 0029

I understand it was dismissed by Ms. Wertz.

**Ms. Graham**

Okay. So as far as insubordination of not providing the training that I was asked to do, I provided that training.

**Judge Romo**

Okay. Did you falsify any reports?

**Ms. Graham**

No, I did not falsify any reports. [crosstalk 00:41:28]

**Judge Romo**

I just need you to answer the questions I'm asking you, okay? Did you have negative conduct towards your coworkers?

**Ms. Graham**

No I didn't.

**Judge Romo**

Do you know what she would be referring to there?

**Ms. Graham**

Debra Wertz? What she would be referring to?

**Judge Romo**

Yeah, why they would say that you had negative conduct towards your coworkers.

**Ms. Graham**

As far as I understand, it was a comment that I was accused of making to Annette Desinger.

**Judge Romo**

And what comment was that?

GRAHAM 0030

**Ms. Graham**

That I said I was babysitting.

**Judge Romo**

Mm-hmm (affirmative).

**Ms. Graham**

Faith Meyers.

**Judge Romo**

Did you say that?

**Ms. Graham**

No, I did not say that.

**Judge Romo**

Okay. Anything else?

**Ms. Graham**

As far as the insubordination, it's like the Paylocity training. In my email on the 12th, I said that
Paylocity training had not been done. And I asked if Debbie Wertz wanted me to reschedule it.

**Judge Romo**

Okay.

**Ms. Graham**

So in its entirety, I was asked to train on Bristol, the benefits, the FMLA, and the work comp, and the
Paylocity. And I did the training for the three. And I've already mentioned that. And then as far as
Paylocity, that training was canceled. And when it was canceled I put it in writing it was canceled
and then asked if Debbie wanted me to follow up and reschedule it and I heard nothing back form
her with regard to that.

**Judge Romo**

Okay. Were you trying to meet the employer's expectations?

GRAHAM 0031

## Ms. Graham

Absolutely. Yes.


## Judge Romo

Okay. Anything else?


## Ms. Graham

As far as the violation of writing my report, I wrote my report, my summary report, with what I actually did do in training on the 10th with Faith. And then I provided the work notes, or the meeting notes, that showed that I did that as well. And it showed that I did the benefits, the FMLA, and the work comp. So the notes provided, that's what Faith and I went over. I think that there was some confusion at the end of everything. That I was supposed to be going over all four at the same time. Whereas I understand that the Paylocity training was being done on the Wednesday from 9 to 11. And then I understood that there was an additional training that I was being asked to do for the 10th. And I think had we been able to sort of discuss, or if I had been interviewed, I think that discrepancy could've been ... I think we could've figured what the problem was there.


## Ms. Graham

But I didn't have the opportunity to respond, really, verbally. Or in writing. I mean I did get to do the writing. I did get the information to Debbie, but I didn't get to respond to the fact that there was a discrepancy with Faith saying that I didn't train. And me saying that I did train.


## Judge Romo

Okay. Anything else?


## Ms. Graham

I think that in the rationale for discharge, it was stated that Debbie was concerned on July 11th about my attitude, my alleged attitude, and the training. So I don't understand why on the 11th she knew this information and at no time really gave me the opportunity to sit down and discuss it. It's like because I had no problems with anything before and I think I could've explained if there was confusion that we would've been able to sort of gone through that together. And I don't know why specifically on this situation was that she didn't give me that opportunity at all. I mean I had been an excellent employee for two and a half years. And not to be able to sort of defend myself or to provide further information as far as more information on the conference call I had with Faith and also my work notes with Faith on the 10th for training.


GRAHAM 0032

#### Ms. Graham

And to sort of explain that what I understand is Paylocity training was canceled and I was asking to reschedule it. So my intention was to do everything that I was directed to do. There was no intention to willfully disobey Debbie's directive at all. I wanted to do the best training I could for Faith. I had an excellent meeting with Faith on July 5th. And I think the discrepancy ... And this is another reason why I kind of questioned the statement from Faith, because the emails that went back and forth with us in our discussion on the 5th was very cordial and very positive. And there's Exhibits showing that back and forth.

#### Ms. Graham

I emailed Debbie and I said it was an excellent conversation. I verbally said that to Debbie after that as well. So it's like the foundation was, to me, was that we had an excellent phone call. And I was looking forward, we were both looking forward, to see each other for the second meeting, which was the Paylocity training, essentially. And I was set up and ready to go for the Paylocity training on Wednesday when I went to the conference room. Because I wasn't scheduled for a meeting there. I went to the conference room to pick up Faith for her Paylocity training. And Debbie told me that she would be staying in the conference room meetings, morning meetings.

#### Ms. Graham

So that was the reason why. It's like since that training was canceled, that's the reason why in my email on July 12th I said, do you want me to reschedule. I mean every intention was to complete my assignments to the best of my ability. And I had trained for two and a half years, you know, executive directors, business office managers, and staff. And it was a part of my job that I enjoyed doing. And I never considered it to be a babysitting task. At all. And I wouldn't really use that description for the work that I do that I enjoy.

#### Judge Romo

Okay. Anything else?

#### Ms. Graham

Well, like I said before, I don't know if it was included with regard to the HR manuals. I know that they weren't provided, but usually protocol is that the employee gets an opportunity to go over ... To first of all know that there's a problem. I mean I can't very well resolve a problem when I don't even know it exists. And I felt like I was blindsided at the termination meeting because it was so unexpected. And the behavior that I was being accused of was, all of a sudden it was like I was doing excellent work and then the next thing I know it's like I'm being insubordinate, I'm being

GRAHAM 0033

dishonest, I'm being negative. And it was just something that I felt like I should be able to defend myself and at least speak to it.

Ms. Graham

And to find out, to really actually have a time for conflict resolution. Rather than just being immediately fired. I think that in the rationale report that Debbie mentions that she ... And it was kind of interesting because I thought, this probably was the problem. During the termination meeting, I claim that I did provide training. Which I did. I did Bristol benefits, I did FMLA, and I did work comp with her. And I did a little bit of Paylocity, but it was just really an introduction so that the next day when we sat down with Paylocity then we would do her Paylocity training. And that was the plan. And then in the rationale and then during the termination meeting it was a little later I would be making excuses why I didn't do the training.

Ms. Graham

I was making excuses because I didn't have the opportunity to do the Paylocity training. So there was four main sections that I was assigned to do. And I did three. And I didn't do the fourth because it was canceled. And then I tried to rescheduled that.

Judge Romo

Okay.

Ms. Graham

And I think had I been able to explain that, I think that we could've been able to resole the conflict. But I wasn't able to resolve any discrepancies that Debbie noticed, in writing or verbally. And I did try to defend myself during the termination meeting, but I wasn't allowed to speak to it. And still I tried to speak to it. And I asked for reconsideration. I said I think there's been a misunderstanding here.

Judge Romo

Anything else that you haven't already stated?

Ms. Graham

Well probably I'm restating things over and over again. No, I think that's it.

Judge Romo

All right. Ms. Wertz, any questions for this witness?

GRAHAM 0034

Ms. Wertz

No. I think Lisa clearly believed the things that she's saying. I don't think asking her questions is going to change it.

Judge Romo

All right. Do you have a final statement Ms. Wertz?

Ms. Wertz

I do. I reviewed the PL that Lisa sent in. And wanting to give her the benefit of the doubt, I did go back to Faith to see if she had, in fact, gone page by page as she mentioned in here, regarding these particular areas. And Faith said that didn't happen. I have that in writing as well. Basically the conversation was uncomfortable. I believe that Bristol did the right thing in letting Lisa go. I feel like that either she wasn't prepared or she deliberately did not train Faith for unknown reasons. I don't know why. But I believe I have enough evidence from the people that participated that these things did, in fact, happen. And so I stand by the decision that we made.

Judge Romo

Okay. Final statement Ms. Graham.

Ms. Graham

Yes. I was employed at Bristol Hospice for two and a half years. And like I said, it's like I had no verbal, written warnings at all. I had meets/exceeds expectations on my reports. On my annual evaluation. I was never put on a work progress program. I think that in light of the fact that I take my job responsibilities very seriously, I enjoy training people. I was prepared to train. I was willing to train. There was no intention not to train. I think that as far as the HR guidelines, I don't believe that they were followed in with regard to corrective action or for involuntary termination. And I have to wonder why. Why all of a sudden after two and a half years that I was not being allowed the opportunity to defend my actions and my words and my good reputation.

Ms. Graham

I'm an honest person. I wouldn't report something that I didn't do. I did the best to my ability. I think that this actually could've been completely ... I think had there been some kind of conflict resolution and discussion between the employer and myself, I think that this conflict could've been resolved. I feel like I just didn't have the opportunity to explain my actions or to supply additional information if Debbie requested it. But I would've been happy to do so.

GRAHAM 0035

## Judge Romo

Okay. I'll take the testimony that's been provided to me and I'll get my decision to you as soon as I can. I plan on having a decision to you within a week. If you haven't received a decision letter from me by next Wednesday, I'd like you to call the Appeals Unit. Call the same telephone number on the hearing notice that you called to give your number to participate in today's hearing. Let them know you haven't received my decision and they'll send you another copy. If you get a decision you disagree with, the instructions for filing an appeal of my decision are on the first page of the letter that I send to you. I appreciate you taking out time to participate in the hearing. Let me just check one more thing, okay?

## Judge Romo

Sorry, my computer is being ... Looks like Ms. Graham you've been filing your weekly reports, which is good. If I decide to reverse the decision and allow benefits, you'll be paid for the weeks you filed on, minus your waiting week.

## Ms. Graham

Okay.

## Judge Romo

I am going to go ahead and declare the hearing closed and wish you all a very good day. Thank you for your time. I hope that you both have a nice afternoon and a nice rest of your week.

## Ms. Wertz

You, too. Thank you.

## Judge Romo

All right. Bye bye.

## Ms. Graham

Appreciate it. Bye.

## Judge Romo

Bye.

GRAHAM 0036