IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| ELIZABETH GRAHAM,<br><br>               Plaintiff,<br>v.<br><br>BRISTOL HOSPICE HOLDINGS, INC.,<br><br>               Defendant. | MEMORANDUM DECISION AND ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT<br><br>Case No. 2:21-cv-00754-TS-DBP<br><br>Judge Ted Stewart<br>Magistrate Judge Dustin B. Pead |

This matter comes before the Court on competing Motions for Summary Judgment.[1] As discussed below, there are genuine disputes of material facts that preclude summary judgment and therefore, the Court will deny both Motions.

I. BACKGROUND

Plaintiff, Elizabeth Graham, sues Defendant, Bristol Hospice Holdings, Inc. ("Bristol"), for retaliation under Title VII. In 2016, Plaintiff began working full time as a Human Resources ("HR") benefits generalist at Bristol. Plaintiff received positive feedback and evaluations prior to her termination on July 13, 2018. During her employment, Plaintiff reported to Debra Wertz, the vice president of HR.

On March 3, 2018, Plaintiff filed a Utah Antidiscrimination and Labor Division ("UALD") complaint and an Equal Employment Opportunity Commission ("EEOC") complaint ("first charge"), against both Ms. Wertz and another coworker, Sandy Dayton, the Director of

---

[1] Docket Nos. 23, 24.

Payroll and Benefits.[2] Plaintiff alleged that the two created a hostile work environment based on age and gender discrimination between February 2017 and when she filed the complaint.[3] Thereafter, on April 24, 2018, the parties engaged in mediation. Plaintiff testified that it was unproductive and she did not see a way for a resolution.[4] Several days later, Plaintiff went to Ms. Wertz and asked if they could move forward in "good faith" if she withdrew her complaint. Ms. Wertz agreed that they could, and Plaintiff withdrew her first charge.[5] Plaintiff continued in her position at Bristol.

During the summer of 2018, Bristol was in the process of purchasing another company, Optimal Hospice ("Optimal").[6] On July 10 and 11, the Optimal HR team met with Bristol's HR team at Bristol's office.[7] As part of the meeting, Plaintiff was scheduled to provide training to Faith Myers, a member of Optimal's HR team, on "benefits, process, Paylocity, etc.," on July 11.[8] At some point, Ms. Wertz changed the training to July 10 to accommodate scheduling.[9] The facts regarding the training are in dispute. On July 11, Ms. Wertz asked Ms. Myers about the training with Plaintiff. Ms. Myers responded that she did not receive the scheduled training from Plaintiff.[10]

---

[2] Docket No. 24-2, at 88:11–17, 90:10–13.

[3] Docket No. 24-6, at 1.

[4] Docket No. 24-2, at 109:9–12.

[5] *Id.* at 109:13–110:8.

[6] *Id.* at 112:24–113:7.

[7] *Id.* at 116:13–20.

[8] Docket No. 24 ¶ 14.

[9] *Id.* ¶ 15; Docket No. 25, at 4.

[10] Docket No. 23, at 6; Docket No. 23-7, at 2.

Ms. Wertz subsequently emailed Plaintiff for a summary of the training.[11] Plaintiff emailed back, stating:

> As per your instructions, I met with Faith on 7/10/2018 in the afternoon and reviewed Bristol's Benefits, Workers' Compensation, FMLA processes and briefly reviewed Paylocity. We were scheduled to meet the following morning for two hours for Paylocity training; however, the Paylocity training was cancelled so Faith and I never met for her scheduled training.[12]

Ms. Wertz testified that she did not conduct a formal investigation into the matter.[13] However, Ms. Wertz testified that in addition to emailing Plaintiff, she talked to other witnesses present when Ms. Myers told Ms. Wertz she was not trained and spoke to witnesses who had heard Plaintiff say she was upset about "babysitting" Ms. Myers.[14] Thereafter, on July 13, Ms. Wertz met with Plaintiff and terminated her employment.[15] Subsequently, Ms. Wertz prepared a letter for the Utah Department of Workforce Services providing the rationale for Plaintiff's termination.[16] In the letter, Ms. Wertz stated that Plaintiff was insubordinate in not following her directive to complete the training and that Plaintiff falsified the training she provided.[17] Ms. Wertz stated that Plaintiff also went against her directive in discussing future job responsibilities with Optimal employees.[18] Additionally, Ms. Wertz memorialized that during the meeting

---

[11] Docket No. 24, at 6.

[12] Docket No. 24-2, at 145:23–146:2, 147:7–11.

[13] Docket No. 24-13, at 19.

[14] Docket No. 24-1, at 215:24–216:7.

[15] Docket No. 24, at 4.

[16] Docket No. 23-7.

[17] *Id.* at 3.

[18] *Id.*

3

Plaintiff claimed she provided the training but later gave excuses as to why the training did not occur.[19]

Plaintiff subsequently filed this suit alleging a single claim of Title VII retaliation under 42 U.S.C. §§ 2000e.[20] Now, both Plaintiff and Defendant seek summary judgment on this claim.

## II. LEGAL STANDARD

Summary judgment is proper if the moving party can demonstrate that there is no genuine issue of material fact and it is entitled to judgment as a matter of law.[21] In considering whether a genuine dispute of material fact exists, the Court determines whether a reasonable jury could return a verdict for the nonmoving party in the face of all the evidence presented.[22] "An issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim."[23] The Court is required to construe all facts and reasonable inferences in the light most favorable to the nonmoving party.[24]

"The movant bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact."[25] "Such a movant may make its prima facie demonstration simply by pointing out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim."[26] Once a movant has carried its initial burden, "the

---

[19] *Id.*

[20] Docket No. 2.

[21] Fed. R. Civ. P. 56(a).

[22] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Clifton v. Craig*, 924 F.2d 182, 183 (10th Cir. 1991).

[23] *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).

[24] *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wright v. Sw. Bell Tel. Co.*, 925 F.2d 1288, 1292 (10th Cir. 1991).

[25] *Adler*, 144 F.3d at 670.

[26] *Id.* at 671; *accord Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

burden shifts to the nonmovant to go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[27]

III. DISCUSSION

It is unlawful "for an employer to discriminate against any of [its] employees . . . because [they] ha[ve] opposed any practice made an unlawful practice by [Title VII], or because [they] ha[ve] made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]."[28] "A plaintiff proves a violation of Title VII either by direct evidence of discrimination or by following the burden-shifting framework of *McDonnell Douglas Corp. v. Green*."[29] In this case, Plaintiff asserts that her claim is supported by both circumstantial and direct evidence of discrimination. The Court will first address Plaintiff's circumstantial evidence arguments under the *McDonnell Douglas* framework,[30] and thereafter Plaintiff's direct evidence argument.

A. *McDonnell Douglas*

Under the *McDonnell Douglas* framework, the plaintiff has "the initial burden . . . of establishing a prima facie case of [retaliation]."[31] If the plaintiff makes this prima facie showing, the defendant then must "articulate a legitimate, nondiscriminatory or nonretaliatory reason for

---

[27] *Adler*, 144 F.3d at 671 (quoting Fed. R. Civ. P. 56(e)).

[28] 42 U.S.C. § 2000e-3(a).

[29] *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012) (citing *McDonnell Douglas Corp v. Green*, 411 U.S. 792 (1973)).

[30] *Foster v. Mountain Coal Co., LLC*, 830 F.3d 1178, 1186 (10th Cir. 2016) ("Because [the plaintiff] attempts to prove his retaliation claim using circumstantial evidence, the analytical framework pronounced in *McDonnell Douglas Corp. v. Green* . . . guides our review.") (internal quotation marks and citation omitted).

[31] *McDonnell Douglas*, 411 U.S. at 802.

5

the adverse action."[32] The plaintiff "then has the burden of demonstrating that [the defendant's] asserted reasons for her termination are pretextual."[33]

    1. Prima Facie Case

To establish a prima facie case of retaliation, Plaintiff must demonstrate that "(1) she engaged in protected opposition to Title VII discrimination; (2) she suffered an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse employment action."[34] It is undisputed that Plaintiff engaged in protected opposition by filing her first charge on March 5, 2018. The parties also do not dispute that in firing Plaintiff, Defendant took adverse employment action against her.[35]

Turning to the third element, Defendant argues that Plaintiff fails to demonstrate a causal connection between protected activity and the adverse employment action.[36]

"The standard for proving a prima facie case . . . is low. The critical inquiry is 'whether the plaintiff has demonstrated that the adverse employment action occurred under circumstances which give rise to an inference of unlawful [retaliation].'"[37]

Specifically, Plaintiff must present "evidence of circumstances that justify an inference of retaliatory motive."[38] Evidence of retaliatory motive can include when protected conduct is

---

[32] *Hiatt v. Colo. Seminary*, 858 F.3d 1307, 1316 (10th Cir. 2017) (alteration, internal quotation marks, and citation omitted).

[33] *Fye v. Okla. Corp. Comm'n*, 516 F.3d 1217, 1227 (10th Cir. 2008) (citation omitted).

[34] *Meiners v. Univ. of Kan.*, 359 F.3d 1222, 1229 (10th Cir. 2004) (citation omitted).

[35] Docket No. 23, at 9.

[36] *Id.* at 9–10; *see Annett v. Univ. of Kan.*, 371 F.3d 1233, 1237 (10th Cir. 2004) ("An adverse employment action constitutes a significant change in employment status, such as . . . firing . . . .") (internal quotation marks and citation omitted).

[37] *Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1221 (10th Cir. 2002) (quoting *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1227 (10th Cir. 2000)).

[38] *Williams v. W.D. Sports, N.M., Inc.*, 497 F.3d 1079, 1091 (10th Cir. 2007).

closely followed by adverse action.[39] While there is no brightline rule for temporal proximity, the Tenth Circuit has found that a three-month period between the protected conduct and the adverse action was too protracted to infer causal connection, but a one and a half month period, by itself, was sufficient to show casual connection.[40] The guiding principle is that "unless the termination is *very closely* connected in time to the protected activity, the plaintiff must rely on additional evidence beyond temporal proximity to establish causation."[41]

The parties do not dispute the following facts: Plaintiff filed her discrimination charge in March 2018; on April 24, 2018, Defendant and Plaintiff attempted unsuccessful mediation; thereafter, Plaintiff approached Ms. Wertz about dropping her charge and both parties agreed to move forward in good faith; on April 30, 2018, Plaintiff requested that the UALD withdraw her charge of discrimination; on June 7, 2018 the parties received notice that the Plaintiff's charge had been withdrawn; and on July 13, 2018, Defendant terminated Plaintiff.

While it is well settled that participation in mediation is a protected activity under Title VII,[42] Defendant argues the mediation date is not the relevant date to determine causal connection because temporal proximity is typically measured from when a plaintiff files a charge

---

[39] *See Chavez v. City of Arvada*, 88 F.3d 861, 866 (10th Cir. 1996) (citation omitted).

[40] *See Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999).

[41] *Id.* (citing *Conner v. Schnuck Mkts., Inc.*, 121 F.3d 1390, 1395 (10th Cir. 1997)).

[42] *Kelley v. City of Albuquerque*, 542 F.3d 802, 813 (10th Cir. 2008) ("Under Title VII it is an unlawful employment practice for an employer to discriminate against any of his [or her] employees or applicants for employment . . . because he [or she] has made a charge, testified, assisted, or *participated in any manner* in an investigation, proceeding, or hearing under this subchapter.") (internal quotation marks and citation omitted); *Erasmus v. Deutsche Bank Americas Holding Grp.*, No. 15 Civ. 1398 (PAE), 2015 WL 7736554, at *10 (S.D.N.Y. Nov. 30, 2015); accord *Filius v. Potter*, 176 F. App'x 8, 11–12 (11th Cir. 2006); *Sampson v. Sch. Dist. of Lancaster*, No. 05 Civ. 6414 (RBS), 2009 WL 1675083, at *6 (E.D. Pa. June 12, 2009); *Collins v. Faurecia Interior Sys., Inc.*, 737 F. Supp. 2d 792, 804 (E.D. Mich. 2010); *Shears v. Mobile Cnty. Revenue Comm'n*, No. 07 Civ. 491 (WSC), 2008 WL 4493234, at *8 (S.D. Ala. Oct. 3, 2008).

of discrimination.[43] Plaintiff supports her assertion that the mediation date should be used by citing to a case from this district, *Bhatia v. 7-Eleven Southland, Corp.*[44] There, the court found that the plaintiff met his burden of establishing causal connection when the evidence showed that he was terminated from his position approximately two weeks after withdrawing from mediation.[45] In that case, the court supported its finding with a footnote stating in part,

> [c]ommon sense dictates that a causal connection may be established when an adverse employment action occurs shortly after an employee withdraws from the mediation process with his employer. The mediation would have the effect of forestalling any adverse action until the negotiations were completed; thus, the temporal analysis should start at the conclusion of the mediation.[46]

Defendant attempts to distinguish *Bhatia* from this case, arguing the date of mediation may only be relevant if the employee "'withdraws from the mediation' to pursue claims and is terminated 'shortly after.'"[47] This ignores the district court's reasoning as stated above. Further, the plaintiff in *Bhatia* did not withdraw from mediation to pursue claims, but instead the parties voluntarily discontinued mediation discussions and the plaintiff withdrew his appeal. The Court finds that Plaintiff's participation in mediation is a relevant date by which to measure temporal proximity.

Plaintiff argues that there is sufficient temporal proximity to satisfy her burden because the time between mediation and her termination was less than three months—two months and 19 days.[48] Defendant argues that the timing is too attenuated.[49]

---

[43] Docket No. 25, at 12.

[44] No. 2:08-CV-987 CW, 2011 WL 4499274, at *3 (D. Utah Sept. 27, 2011).

[45] *Id.* at *3.

[46] *Id.* at *3 n.5.

[47] Docket No. 25, at 12.

[48] Docket No. 24, at 11–12.

[49] Docket No. 25, at 12–13.

The Supreme Court has emphasized that in Title VII discrimination cases to "accept mere temporal proximity between . . . protected activity and an adverse employment action as sufficient evidence of causality," the temporal proximity, "must be very close."[50] As stated above, the Tenth Circuit has established that a three-month gap between a protected activity and adverse action is too long to establish causation without additional support.[51] Because the timing here is just short of three months, Plaintiff must rely on more than temporal proximity to demonstrate causal connection.

Plaintiff proffers additional facts to support causal connection, including that Defendant received notice that the charge had been withdrawn by Plaintiff a little over a month before she was terminated. Defendant, in turn, argues that the notice of withdrawal is not protected activity.[52] However, Plaintiff does not assert that notice of withdrawal is protected activity but rather that the notice is relevant because it gave Defendant the "green light" to retaliate.[53]

Plaintiff also argues that Defendant waited until the "opportune time" to retaliate against her—after the parties were notified that the charge had been dropped and after she had returned from a trip.[54] Plaintiff cites to two Second Circuit cases to support her argument.[55] In those

---

[50] *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (internal quotation marks and citation omitted).

[51] *See e.g. Hysten v. Burlington N. & Santa Fe Ry. Co.*, 296 F.3d 1177, 1184 (10th Cir 2002) (holding that a three-month gap between protected activity and adverse action was too long to establish causation by itself); *Hall v. Interstate Brands Corp.*, 395 F. App'x 519, 522 (10th Cir. 2010) (affirming the district court's finding that three months between protected activity and adverse action was too long to establish temporal proximity).

[52] Docket No. 25, at 13 (citing *Proctor v. United Parcel Serv.*, 502 F.3d 1200 (10th Cir. 2007)).

[53] Docket No. 28, at 14–15.

[54] *Id.* at 14.

[55] *See Summa v. Hofstra Univ.*, 708 F.3d 115 (2d Cir. 2014); *Espinal v. Goord*, 558 F.3d 119 (2d Cir. 2009).

9

cases, the Second Circuit concluded that although there was significant time between the plaintiff's protected activity and the adverse action, when "the adverse action occurred at the first actual opportunity to retaliate,"[56] the plaintiff presented sufficient facts to support causation.[57] Here, Plaintiff argues that her termination shortly after returning from a business trip supports causal connection because it took place at the first opportunity to retaliate. Defendant counters that it could have fired her regardless of where she was located.

Finally, Plaintiff asserts that pretext also supports causation. Under the *McDonnell Douglas* framework, whether the defendant's proffered nonretaliatory reasons are pretext for the adverse action can also be considered in determining a causal connection.[58]

While Plaintiff presents sufficient evidence of her prima facie case to survive summary judgment, the Court finds that there are genuine disputes of material fact that preclude summary judgment in Plaintiff's favor. For example, whether the circumstances presented Defendant the first opportunity to retaliate present a material fact in dispute. Further, whether pretext supports causal connection also presents genuine disputes of material facts, including whether an unwritten company practice existed and if so, whether the practice would apply to Plaintiff, the facts surrounding the emails between Ms. Wertz and Ms. Myers, and whether Ms. Wertz conducted a fair investigation. "[R]esolution of th[ese] dispute[s] will hinge largely on a jury's evaluation of the evidence and the credibility of the witnesses."[59] Accordingly, the Court declines to grant summary judgment on whether Plaintiff has established a prima facie case.

---

[56] *Summa*, 708 F.3d at 128.

[57] *Espinal*, 558 F.3d at 129.

[58] *Wells v. Colo. Dep't of Transp.*, 325 F.3d 1205, 1218 (10th Cir. 2003); *Proctor*, 502 F.3d at 1209.

[59] *Neuifi v. Snow Garden Apartments*, No. 2:12-cv-00774, 2014 WL 7405472, at *12 (D. Utah Dec. 30, 2014).

2. Legitimate, Nonretaliatory Reason for Adverse Action

There are also material factual disputes precluding summary judgment as to whether Defendant proffers a legitimate, nonretaliatory reason for Plaintiff's termination.[60] Defendant's "burden is one of production, not persuasion; it can involve no credibility assessment."[61] Accordingly, Defendant's burden is "exceedingly light,"[62] and the "reasons need only be legitimate and non-discriminatory 'on their face.'"[63]

Defendant asserts that it terminated Plaintiff because she refused to follow specific instructions by failing to provide the training and falsely represented that she completed the training.[64] It argues that this explanation is consistent with the underlying facts.[65] Defendant puts forth the following to support this: Defendant instructed Plaintiff to train Ms. Myers regarding benefits, workers' compensation, FMLA, and Paylocity; when Ms. Wertz asked Ms. Myers about the training, Ms. Myers responded that she had not received the training and reported feeling uncomfortable; when Ms. Wertz asked Plaintiff about the training, she stated that she provided it; Ms. Wertz stated that she terminated Plaintiff because Plaintiff did not train Ms. Myers as she was asked to, disparaged Bristol, and misrepresented that she conducted the training.[66]

---

[60] *See Fye*, 516 F.3d at 1228.

[61] *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000) (internal quotation marks and citation omitted).

[62] *Williams v. FedEx Corp. Servs.*, 849 F.3d 889, 900 (10th Cir. 2017) (quoting *E.E.O.C. v. C.R. England, Inc.*, 644 F.3d 1028, 1043 (10th Cir. 2011)).

[63] *DePaula v. Easter Seals El Mirador*, 859 F.3d 957, 970 (10th Cir. 2017) (quoting *C.R. England*, 644 F.3d at 1043.

[64] Docket No. 23, at 10.

[65] *Id.*

[66] *Id.* at 10–11.

Plaintiff argues that Defendant cannot demonstrate a legitimate, nonretaliatory reason for terminating her because emails between Ms. Wertz and Ms. Myers discussing the training were not produced in discovery and Ms. Myers' statement about the incident was produced in preparation for litigation.[67] The parties dispute the facts surrounding the emails from Ms. Myers, but no matter the reason, the emails were not produced in discovery. And, whether Defendant is able to present the contents of the emails in an admissible fashion remains an open question. The emails present a sufficient genuine issue of material fact that precludes summary judgment. Additionally, the facts underlying the Paylocity training are in dispute or at the very least, are unclear.[68]

Because there are genuine issues of material fact as to whether Plaintiff has presented a prima facie case of retaliation and whether Defendant has demonstrated a legitimate, nonretaliatory reason for Plaintiff's termination, summary judgment is not appropriate, and the Court need not address the third prong under *McDonnell Douglas*. Even assuming each party had met their respective burdens at the first two steps of the *McDonnell Douglas* burden-shifting framework, disputed issues would nevertheless preclude summary judgment.

B. Direct Evidence

Plaintiff argues in her response to Defendant's motion that Ms. Wertz's reactions are direct evidence of "retaliatory animus."[69] "Direct evidence is evidence, which if believed, proves the existence of a fact in issue without inference or presumption."[70] Direct evidence must

---

[67] Docket No. 24, at 13–14.

[68] Docket No. 28, at 5.

[69] Docket No. 26, at 14.

[70] *Hall v. U.S. Dep't of Lab., Admin. Rev. Bd.*, 476 F.3d 847, 854 (10th Cir. 2007) (internal quotation marks and citation omitted).

"demonstrate[] on its face that the employment decision was reached for [retaliatory] reasons."[71] "A statement that can plausibly be interpreted two different ways—one discriminatory and the other benign—does not directly reflect illegal animus, and, thus, does not constitute direct evidence."[72]

Plaintiff asserts that two instances involving Ms. Wertz demonstrate direct evidence of retaliatory animus. In the first, Plaintiff provided support for a coworker's sexual harassment EEOC claim in February 2018. She testified that she felt hostility from Ms. Wertz when she provided information to support the claim and that Ms. Wertz was very angry.[73] This reaction came before Plaintiff filed her charge of discrimination. Second, Plaintiff points to Ms. Wertz's reaction to her charge of discrimination. In particular, Ms. Wertz said she felt that Plaintiff's allegations were untrue and ludicrous.

These statements and reactions do not demonstrate direct evidence of retaliation on their face. Instead, they are evidence from which retaliatory purpose could potentially be inferred. Accordingly, this is circumstantial evidence to be considered by the jury at trial.

## IV. CONCLUSION

It is therefore

ORDERED that Defendant's Motion for Summary Judgment (Docket No. 23) is DENIED; It is further

ORDERED that Plaintiff's Motion for Summary Judgment (Docket No. 24) is DENIED; It is further

---

[71] *Riggs v. AirTran Airways, Inc.*, 497 F.3d 1108, 1117 (10th Cir. 2007) (internal quotation marks and citation omitted).

[72] *Hall*, 476 F.3d at 855 (internal quotation marks and citation omitted).

[73] Docket No. 27, at 6.

ORDERED that the parties participate in a settlement conference. The Court will refer this matter to a Magistrate Judge to conduct the conference in a separate order.

DATED December 16, 2024.

BY THE COURT:

_____
TED STEWART
United States District Judge