Ryan B. Frazier (9007)
Jonathan M. Burt (16794)
**KIRTON | McCONKIE**
2600 W. Executive Parkway, Suite 400
Lehi, Utah 84043
Telephone: 801-426-2100
Email: rfrazier@kmclaw.com
       jburt@kmclaw.com

*Attorneys for Defendant Bristol Hospice Holdings, Inc.*

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| ELIZABETH GRAHAM,<br><br>     Plaintiff,<br><br>v.<br><br>BRISTOL HOSPICE HOLDINGS, INC.,<br><br>     Defendant. | **DEFENDANT'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR TO REDUCE DAMAGES AWARD**<br><br><br>Civil Case No.: 2:21-cv-00754-TS-DBP<br>District Judge: Ted Stewart<br>Magistrate Judge: Dustin B. Pead |

### INTRODUCTION AND STATEMENT OF RELIEF REQUESTED

Pursuant to Federal Rule of Civil Procedure 50(b), Bristol hereby renews its motion for judgment as a matter of law, or, in the alternative, requests a new trial under Rule 59. As explained below, Bristol seeks entry of judgment as a matter of law because Graham failed to adduce sufficient evidence at trial to support her retaliation claim. The evidence supports only one reasonable conclusion: Graham's protected activities were not a "but-for" cause of the termination of her employment. Rather, she was fired because she failed to train Ms. Faith Myers ("Myers") as instructed and then she misrepresented what training she provided. For that reason,

1

judgment in Bristol's favor is appropriate. In the alternative, Bristol requests that this Court grant a new trial under Rule 59.

In addition, Bristol also requests a remittitur. The punitive damages award of $5,000,000 is excessive and must be reduced. In the alternative, a new trial should be granted under Rule 59 because the jury's passion and prejudice infected the entire trial and deprived Bristol of a fair, unbiased review of the evidence.

Finally, Bristol also requests that the Court reduce both the compensatory and punitive damages awarded by the jury to a maximum of $300,000. The statutory cap of $300,000 set forth in 42 U.S.C. § 1981a(b)(3) is mandatory and applies to this case.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

1. On January 28, 2026, Bristol orally moved for judgment as a matter of law under Federal Rule of Civil Procedure 50(a).

2. After the parties concluded their arguments, the Court denied the oral Rule 50(a) motion.

3. The Court then formally denied the Rule 50 Motion in a written ruling on January 30, 2026. (*See* ECF 89).

4. In the written Rule 50 Motion Decision, the Court ruled that "there is no evidence to support the *Kolstad* defense" and, therefore, the Court stated that it "will not instruct the jury on it." (*Id.* at 7.)

## LEGAL STANDARD

"A party is entitled to [judgment as a matter of law] only if the court concludes that all of the evidence in the record reveals no legally sufficient evidentiary basis for a claim under the controlling law." *Bill Barrett Corp. v. YMC Royalty Co., LP*, 918 F.3d 760, 766 (10th Cir. 2019).

4933-1498-6642.v1

A legally sufficient basis requires more than "a scintilla of evidence" favoring plaintiff. *Cooper v. Asplundh Tree Expert Co.*, 836 F.2d 1544, 1547 (10th Cir. 1988).

## ARGUMENT

**I.    JUDGMENT AS A MATTER OF LAW FOR BRISTOL IS WARRANTED AS GRAHAM DID NOT PRESENT SUFFICENT EVIDENCE TO SUPPORT THE JURY VERDICT THAT BRISTOL IS LIABLE FOR RETALIATION.**

### A.  Graham Failed to Present Sufficient Evidence to Establish Retaliation.

Graham had to prove three elements to establish her retaliation claim at trial: (1) she engaged in protected activity; (2) she suffered an adverse employment action; and (3) her protected activity was the but-for cause of the adverse action. *Walkingstick Dixon v. Okla. Ex rel. Reg. Univ. Sys. Of Okla. Bd.* , 125 F.4th 1321, 1339 (10th Cir. 2025). The first two elements were not in dispute at trial. The final element – causation – was at issue.

"To establish a causal connection," Graham was required to "present 'evidence of circumstances that justify an inference of retaliatory motive.'" *Ward v. Jewell*, 772 F.3d 1199, 1203 (10th Cir. 2014). In Title VII retaliation lawsuits, "courts must employ the 'but for' causation standard, not the 'mixed motive' standard." *Barrett v. Salt Lake Cnty.*, 754 F.3d 864, 868 (10th Cir. 2014); *see also Univ. of Texas SW Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013) ("Title VII retaliation claims must be proved according to traditional principles of but-for causation.") To satisfy this "but-for" causation requirement, Graham had to offer "proof that the unlawful retaliation ***would not have occurred in the absence of the alleged wrongful action*** or actions of the employer." *Univ. of Texas SW Med. Ctr.*, 570 U.S. at 360 (emphasis added).

Here, all of the evidence present leads to one conclusion: Debra Wertz ("Wertz") terminated Graham's employment for a legitimate, nonretaliatory reason, not in retaliation for engaging in protected conduct. Specifically, the trial evidence establishes that Wertz fired Graham because of the training incident in July 2018 and not for any other reason. *See Woolley*

*v. Anesta LLC*, No. 2:17-cv-00318-PMW, 2019 WL 1429608 (D. Utah March 29, 2019). The evidence presented shows that she genuinely believed that Graham did not train Myers and then that Graham lied about that fact.

Myers, a witness with nothing to gain by testifying in Bristol's favor at trial, corroborated Wertz's testimony that Graham did not train her. More importantly, Myers testified that she had ***informed*** Wertz that she had not been trained. Wertz testified that she believed this report as she could not see any reason for Myers to lie. As such, Wertz had good reason to terminate Graham's employment – and that reason had nothing to do with any protected conduct.

There is no direct evidence that refutes that the reason for the termination of Graham's employment was anything other than the reasons Wertz articulated – Graham's failure to train Myers and then lying about whether she did so. Graham admitted this. Graham may argue that circumstantial evidence is sufficient to show retaliatory motive. But that is not the case. The only circumstantial evidence that she presented is that she engaged in protected activity, that Bristol terminated her employment, that Bristol (supposedly) failed to follow a progressive discipline policy, and that the temporal proximity between her Charge and the termination was such that there ***must have been*** retaliatory intent. This circumstantial evidence does not show retaliation.

First, although a "retaliatory motive may be inferred when an adverse action closely follows protected activity," "unless the termination is <u>very closely</u> connected in time to the protected activity, the plaintiff must rely on additional evidence beyond temporal proximity to establish causation."[1] *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999) (emphasis in original). Further, the fact that Graham voluntarily withdrew her Charge supports

---

[1] But the Tenth Circuit has concluded that "a three-month period" between the protected conduct and the termination is insufficient to determine that the termination was the result of the protected activity based on temporal proximity alone. *Walkingstick Dixon*, 125 F.4th at 1339 (quoting *Anderson.*, 181 F.3d at 1179.)

4

the conclusion that Graham's Charge had no bearing on the discharge. Wertz testified that she appreciated the fact that Graham voluntarily withdrew the Charge.

Second, the failure to follow a progressive discipline policy does not show retaliatory motive. Notably, Bristol did not agree or promise to follow a progressive discipline policy. The evidence at trial is that the progressive discipline policy itself provides that it does not need to be followed when immediate termination is appropriate. The termination letter presented to Graham, which is Trial Exhibit 3, specifically identified the reasons for the termination of her employment and cited to those sections of the employee handbook for immediate termination. There was no evidence – direct or circumstantial – that Wertz intentionally avoided progressive discipline so that she could retaliate.

Without evidence establishing causation, the jury was left to *speculate* that Graham's protected conduct somehow was a "but-for" reason for the termination of Graham's employment. But a jury verdict must be premised on evidence, not speculation. *Ward*, 772 F.3d at 1203 (quoting *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004)). Without more than just the fact of protected conduct and a termination a few months later, Graham did not present the jury with sufficient evidence on which it could conclude there was retaliation. Accordingly, judgment as a matter of law is appropriate, and the lawsuit should be dismissed. At the very least, a new trial is appropriate.

## II.   GRAHAM'S NON-ECONOMIC DAMAGES SHOULD BE SET ASIDE OR SUBSTANTIALLY REDUCED.

### A.   Graham Failed to Present Sufficient Evidence To Support the Jury Punitive Damages Award.

Punitive damages under Title VII should be awarded only in particular cases. *See* 42 U.S.C. § 1981a(b)(1). "A Title VII plaintiff is entitled to punitive damages if [her] employer engaged in discriminatory practices 'with malice or with reckless indifference to [her] federally

protected rights." *Zisumbo v. Ogden Reg'l Med. Ctr.*, 801 F.3d 1185, 1201 (10th Cir. 2015) (quoting 42 U.S.C. § 1981a(b)(1)). "'Malice' and 'reckless indifference' require proof the employer acted 'in the face of a perceived risk that its actions would violate federal law.'" *Id.* (quoting *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 535-36 (1999)). Whether there is sufficient evidence to support a punitive damages award is a question of law. *Deters v. Equifax Credit Information Servs., Inc.*, 202 F.3d 1262 (10th Cir. 2000).

Here, there is insufficient evidence of malice or reckless indifference. Graham failed to present sufficient evidence that Wertz or Bristol were aware that their actions would violate federal law. To be sure, they were aware of Title VII and its requirements. But under the circumstances, they did not have reason to believe that their actions would violate federal law. Graham voluntarily withdrew the Charge, and Wertz and Graham's relationship was as it was before the Charge. The parties engaged in mediation and discussions about how to move past their workplace issues. In fact, Graham testified that following the mediation, the working relationship between Graham and Wertz returned to normal.

Further, Graham did not prove that Wertz perceived a risk that she was terminating Graham's employment in violation of federal law. Wertz testified that she was familiar with Title VII's anti-retaliation provision and that she approaches charges, including Graham's Charge, in a positive, constructive way. Graham did not show malice or reckless indifference to her rights in the presented evidence. As such, punitive damages are inappropriate and unwarranted based on the evidence presented by Graham.

Even if punitive damages were awardable, the jury should have been permitted to consider the good-faith defense available under the Supreme Court's decision in *Kolstad v. American Dental Association.* Under *Kolstad*, an employer may not be vicariously liable for punitive damages for the discriminatory employment decisions of managerial agents where those

6

decisions are contrary to the employer's good-faith efforts to comply with Title VII. 527 U.S. 526 (1999); *McInnis v. Fairfield Communities, Inc.*, 458 F.3d 1129, 1136-37 (10th Cir. 2006). As the Supreme Court explained, "giving punitive damages protection to employers who make good-faith efforts to prevent discrimination in the workplace accomplishes Title VII's objective of motivating employers to detect and deter Title VII violations." *Id.* at 546.

In this case, the Court declined to instruct the jury on the *Kolstad* defense. (*See* Rule 50 Mot. Decision (ECF No. 89), at 7.) But the *Kolstad* defense is appropriate here. There is overwhelming evidence of Bristol's good-faith efforts to comply with Title VII. It has extensive anti-retaliation policies. Employees, including Graham, were informed and educated about those policies. Notably, they were set forth in the Employee Handbook, which Graham acknowledged receiving and reviewing. And Wertz testified regarding enforcement of those policies. For these reasons, we respectfully ask that the Court rule that punitive damages are not warranted or grant a new trial at which a jury may be instructed on the *Kolstad* defense.

**B.      The Punitive Damages Award Amount Should be Substantially Reduced or a New Trial Should Be Granted.**

The jury's $5,000,000 punitive damages award was excessive.[2] The amount of the award exceeds the bounds of reasonableness. Federal courts "exercise relatively stringent control over the size of punitive awards in order to ensure that such damages are 'fair, reasonable, predictable, and proportionate,' to avoid extensive and burdensome social costs, and to reflect the fact that punitive awards are imposed without the protections of criminal trials." *Turley v. ISG Lackawanna Inc.*, 774 F.3d 140, 164 (2d Cir. 2014). "[I]t is the duty of the trial judge to require a

---

[2] Although the damages cap of 42 U.S.C. § 1981a(b)(3) applies to the punitive damage award, the Court should nevertheless reduce the punitive damages. Bristol's request is not only about the amount of punitive damages that it may need to pay. Rather, Bristol will likely be prejudiced by the messaging of an unwarranted jury verdict of $5,000,000 in punitive damages.

4933-1498-6642.v1

remittitur or a new trial" if "the amount of damages awarded is excessive." *Linn v. United Plant Guard Workers*, 383 U.S. 53, 65-66, 86 S.Ct. 657 (1966).

"In assessing the reasonableness of the punitive damages award, [the Court should] consider the purposes of such a remedy, namely to punish and deter." *Deters*, 202 F.3d at 1273. Here, the amount awarded is substantially more than would be necessary to punish Bristol for any inappropriate actions (if there were any) in terminating Graham's employment or to deter such actions in the future. Indeed, the punitive damage award is so large that it has a likelihood to deter terminations even when fully justified.

Punitive damage awards may be excessive and constitutionally violate due process. *See, e.g., EEOC v. Wal-Mart Stores, Inc.*, 187 F.3d 1241, 1249 (10th Cir. 1999); *see also BMW of N. Am. v. Gore*, 517 U.S. 559, 562, 116 S.Ct. 1589, 1592-93 (1996). There are three "guideposts" in evaluating whether a punitive damage award is constitutionally excessive. *See Continental Trend Res., Inc. v. OXY USA Inc.*, 101 F.3d 634, 638 (10th Cir. 1996); *see also Gore*, 517 U.S. at 574-75, 116 S.Ct. at 1598-99. The three guideposts are "the degree of reprehensibility" of the defendant's conduct; "the disparity between the harm or potential harm . . . and [the] punitive damages award;" and "the difference between this remedy and the civil penalties authorized or imposed in comparable cases." *Gore*, 517 U.S. at 574-75, 116 S.Ct. at 1598-99.

The first guidepost, which the Supreme Court stated is "[p]erhaps the most important indicium of the reasonableness of a punitive damages award," *Gore*, 517 U.S. at 575, 116 S.Ct. at 1599, indicates that the jury's punitive damages award was excessive. "It should be presumed a plaintiff has been made whole for [her] injuries by compensatory damages, so punitive damages should only be awarded if the defendant's culpability . . . is so reprehensible as to warrant the imposition of further sanctions to achieve punishment or deterrence." *State Farm Mut. Auto. Ins. Co.*, 538 U.S. at 419, 123 S.Ct. at 1513. Graham did not present evidence of a

8

substantial degree of reprehensible conduct – certainly not conduct that merits a $5,000,000 punishment.

The second guidepost also indicates that the punitive damages award was excessive. In this analysis, the Court should consider the ratio of punitive damages award "to the actual harm inflicted on the plaintiff. *See id.* at 517 U.S. at 580, 116 S.Ct. at 1601. Here, the disparity between the compensatory damages and the punitive damages in this case is substantial. The ratio of the punitive damages (*i.e.*, $5,000,000) to the compensatory damages (*i.e.*, $75,000) in the jury's verdict here was a staggering almost 67:1. That stands in stark contrast to ratios more likely to be upheld. For example, the Supreme Court in *Gore* explained that ratios of 4:1 and 10:1, while they "might be 'close to the line,'" would not be excessive. *Id.*

Under the circumstances of this case, the punitive damages award should be reduced as excessive. Reduction is consistent with what other Federal Courts have done. *See, e.g., Lompe v. Sunridge Partners, LLC*, 818 F.3d 1041, PIN (10th Cir. 2016); *Malandris v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 703 F.2d 1152, 1177-78 (10th Cir. 1981).

There is no way that a $5,000,000 damages award could have been expected or anticipated. Graham did not request $5,000,000 in punitive damages. Graham did not present any evidence suggesting that an award of punitive damages in that amount (or an amount close to that amount) was appropriate in this instance. There was no evidence presented to which the jury could tether a punitive damages award. Graham did not adduce any evidence about what an appropriate award would be. In short, the jury had no evidence on which to base an award, and it simply came up with the amount of punitive damages award out of thin air.

Alternatively, Rule 59 permits the Court to grant a new trial. The jury's $5,000,000 punitive damage award was not based on evidence and was instead based on passion and prejudice. A new trial is the appropriate remedy for a verdict that results from passion or

prejudice of the jury. *Laxton v. Gap Inc.*, 333 F.3d 572, 586 (5th Cir. 2003); *Holmes v City of Massillon*, 78 F.3d 1041, 1045-46 (6th Cir. 1996). When ruling on a motion for a new trial, the Court can weigh the evidence itself and need not view the evidence in the light most favorable to the prevailing party. *Jennings v. Jones*, 587 F.3d 430, 438 (1st Cir. 2009). Here, the disparity between the jury's $75,000 compensatory damages award and its $5,000,000 punitive damages award in this run-of-the-mill retaliation case reflects the jury's prejudice or bias. Because the jury's bias against Bristol impaired its ability to objectively and fairly find the facts, the Court should grant a new trial.

### III.  GRAHAM'S NON-ECONOMIC DAMAGES SHOULD BE REDUCED BECAUSE THEY ARE SUBJECT TO TITLE VII'S DAMAGES CAP.

The jury returned a verdict of $75,000 in compensatory/non-economic damages and $5,000,000 in punitive damages (collectively, the "Compensatory Damages"). However, the Compensatory Damages are subject to Title VII's $300,000 damages cap.

Title VII contains a mandatory statutory limit on the compensatory and punitive damages that are recoverable. *See* 42 U.S.C. § 1981a(b)(3). "This limit applies to the combined sum of compensatory and punitive damages." *McInerney v. United Air Lines, Inc.*, 463 Fed.Appx. 709, 724 (10th Cir. 2011). Bristol has more than 500 employees and, therefore, it is subject to the $300,000 cap.

The $300,000 cap applies to the entire jury verdict. Therefore, all of the Compensatory Damages awarded by the jury should be reduced to $300,000 under Title VII's damages cap. *See* 42 U.S.C. § 1981a(b)(3).

### CONCLUSOIN

For these reasons, Bristol respectfully requests that the Court grant judgment as a matter of law in favor of Bristol and dismiss Graham's retaliation claim. In addition, the jury's punitive

4933-1498-6642.v1

damages award should be reduced, or a new trial should be granted. Finally, both the compensatory and punitive damages should be reduced to $300,000 pursuant to the damages cap of 42 U.S.C. § 1981a(b)(3).

Respectfully submitted this 24th day of February 2026.

KIRTON McCONKIE

/s/ Ryan B. Frazier
Ryan B. Frazier
Jonathan M. Burt

**WORD COUNT CERTIFICATION**

"I, Jonathan Burt, certify that this **DEFENDANT'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR TO REDUCE DAMAGES AWARD** contains 3,043 words of a 3,100 limit and complies with DUCivR 7-1(a)(4).

/s/ Jonathan M. Burt
Jonathan M. Burt

11

4933-1498-6642.v1