IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| ELIZABETH GRAHAM,<br><br>                        Plaintiff,<br><br>v.<br><br>BRISTOL HOSPICE HOLDINGS, INC.,<br><br>                        Defendant. | MEMORANDUM DECISION AND ORDER DENYING DEFENDANT'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW AND GRANTING IN PART DEFENDANT'S MOTION TO REDUCE DAMAGES AWARD<br><br><br>Case No. 2:21-cv-00754<br><br>District Judge Ted Stewart<br>Magistrate Judge Dustin B. Pead |

This matter comes before the Court on Defendant's Renewed Motion for Judgment as a Matter of Law or to Reduce Damages Award.[1] For the reasons discussed below, the Court will deny the Renewed Motion and grant the Motion to Reduce Damages Award in part.

I. BACKGROUND

Plaintiff, Elizabeth Graham, sued Defendant, Bristol Hospice Holdings, Inc. ("Bristol"), for retaliation under Title VII. At the time her employment was terminated, Plaintiff was working full time as a Human Resources ("HR") benefits generalist at Bristol. During her employment, Plaintiff reported to Debra Wertz, the Executive Vice President of HR.

At trial, Plaintiff argued that Bristol terminated her employment after she complained about discrimination in the workplace and that it did so because she engaged in protected activity. Defendant argued that Plaintiff was fired for non-retaliatory reasons: because she did

---

[1] Docket No. 97.

not follow instructions, failed to complete a training, and falsely represented that she completed the training.

At the conclusion of Plaintiff's case-in-chief, Bristol moved for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(a) on the basis that Plaintiff failed to present sufficient evidence such that a reasonable jury could find that it terminated Plaintiff because of her protected activity. Bristol also argued that Plaintiff did not present sufficient evidence to support a claim for punitive damages, but if the Court determined that she did, the Court should instruct the jury on the *Kolstad* defense. The Court denied the Motion.[2] The jury returned a verdict in favor of Plaintiff and awarded $75,000.00 in compensatory damages and $5,000,000.00 in punitive damages.

After trial, Defendant filed the present Renewed Motion for Judgment as a Matter or Law or to Reduce Damages Award. Having fully reviewed the parties' briefing and finding that oral argument would not be materially helpful,[3] the Court now rules on the Motions.

## II. DISCUSSION

### A. Renewed Motion for Judgment as a Matter of Law

Under Federal Rule of Civil Procedure 50(a)(1), a court may grant a motion for judgment as a matter of law when "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue."[4] In considering such a motion, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or

---

[2] Docket No. 89.

[3] *See* DUCivR 7-1(g).

[4] Fed. R. Civ. P. 50(a)(1).

weigh the evidence."[5] "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge."[6] Thus, "a motion for a judgment as a matter of law is cautiously and sparingly granted,"[7] and "is improper unless the evidence so overwhelmingly favors the moving party as to permit no other rational conclusion."[8]

A party that has made a motion for judgment as a matter of law under Rule 50(a) prior to a jury verdict, may renew that motion under Rule 50(b) after judgment is rendered. However, "the renewed motion's scope is restricted to issues developed in the initial [Rule 50(a)] motion."[9]

Defendant renews its previous argument that the Court should grant judgment as a matter of law in its favor because Plaintiff failed to present sufficient evidence to support but for causation[10] and failed to present sufficient evidence to support a punitive damages award.[11]

At trial, Plaintiff brought a retaliation claim against Defendant. To prove retaliation Plaintiff must prove (1) she engaged in protected activity under federal law by complaining

---

[5] *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

[6] *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 255 (1986); *Liberty Mut. Fire Ins. Co. v. Woolman*, 913 F.3d 977, 983 (10th Cir. 2019) ("All reasonable inferences are drawn in favor of the nonmoving party and th[e] court does not make credibility determinations or weigh the evidence.") (internal quotation marks and citation omitted).

[7] *Weese v. Schukman*, 98 F.3d 542, 547 (10th Cir. 1996).

[8] *Shaw v. AAA Eng'g & Drafting Inc.*, 213 F.3d 519, 529 (10th Cir. 2000); *In re: Cox Enters., Inc.*, 871 F.3d 1093, 1096 (10th Cir. 2017) (reiterating that under Rule 50, "judgment as a matter of law is appropriate only if the evidence points but one way and is susceptible to no reasonable inferences which may support the nonmoving party's position") (internal quotation marks and citations omitted).

[9] *Michael Found., Inc. v. Urantia Found.*, 61 F. App'x 538, 544 (10th Cir. 2003).

[10] Docket No. 97, at 3.

[11] *Id.* at 5–6.

about discrimination in the workplace; (2) Defendant subjected Plaintiff to adverse employment action; and (3) the adverse action was taken because of her protected activity.[12]

Defendant argues that Plaintiff failed to present sufficient evidence of causation such that a reasonable jury could find for Plaintiff on the issue. Defendant asserts that "all of the evidence present[ed] leads to one conclusion: Debra Wertz terminated Graham's employment for a legitimate, nonretaliatory reason, not in retaliation for engaging in protected conduct."[13] It cites to Faith Myers' testimony that Plaintiff did not train her and Ms. Wertz's testimony that she terminated Plaintiff for "failure to train Myers and then lying about whether she did so."[14]

While there was, as Defendant asserts, evidence presented at trial that Ms. Wertz terminated Plaintiff for non-retaliatory reasons, there was also evidence presented to support that the reasons given for terminating her were pretextual as previously chronicled in the Court's Memorandum Decision and Order Denying Defendant's Rule 50 Motion for Judgment as a Matter of Law.[15]

Viewing the evidence presented at trial in the light most favorable to Plaintiff, the Court finds that a reasonable jury could conclude that Plaintiff's participation in protected activity was the but for cause of her termination. Plaintiff presented sufficient evidence from which a reasonable jury could conclude that Defendant's stated reasons for terminating Plaintiff were pretextual and that the real reason Plaintiff was terminated was because she engaged in protected activity.

---

[12] *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1234 (10th Cir. 2000).

[13] Docket No. 97, at 3.

[14] *Id.* at 4.

[15] Docket No. 89, at 3–4.

Defendant also argues there was no direct evidence of retaliatory intent and the circumstantial evidence was not enough to show retaliation. As discussed in the Court's prior Order, there was sufficient evidence from which a reasonable jury could conclude that the reasons stated by Bristol were pretextual and Plaintiff was terminated because of her protected activity and it is improper for the Court to weigh the evidence on a Rule 50 Motion.[16] Accordingly, the Court will deny the Renewed Motion as to the retaliation claim.

Next, Defendant renews its Motion as to Plaintiff's claim for punitive damages. Defendant argues that Plaintiff did not present sufficient evidence of malice or reckless indifference because the evidence did not support that Ms. Wertz or Bristol were aware that their actions would violate federal law.[17]

"A Title VII plaintiff is entitled to punitive damages if his employer engaged in discriminatory practices 'with malice or reckless indifference to [her] federally protected rights'"[18] "'Malice' or 'reckless indifference' require proof the employer acted 'in the face of a perceived risk that its actions would violate federal law.'"[19] Accordingly, in this context, these terms do not refer to "the egregiousness of the employer's conduct, but rather to the employer's knowledge that it may be acting in violation of federal law."[20]

The Tenth Circuit has held that punitive damages may proceed where (1) "a reasonable jury could find that [the plaintiff's] termination was illegal retaliation against her federally

---

[16] *Anderson*, 477 U.S. at 255; *Liberty Mut. Fire Ins. Co.*, 913 F.3d at 983.

[17] Docket No. 97, at 6.

[18] *Zisumbo v. Ogden Reg'l Med. Ctr.*, 801 F.3d 1185, 1201 (10th Cir. 2015) (quoting 42 U.S.C § 1981a(b)(1)).

[19] *Deters v. Equifax Credit Info. Servs., Inc.*, 202 F.3d 1261, 1269 (10th Cir. 2000); *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 535–36 (1999)).

[20] *Deters*, 202 F.3d at 1269.

protected rights for reporting sexual harassment,"[21] and (2) the retaliatory actions were taken "in the face of a perceived risk that such actions would violate federal law."[22]

In *Flitton v. Primary Residential Mortgage*,[23] the Tenth Circuit reversed a district court's decision not to instruct the jury on punitive damages. The court concluded that a reasonable jury could find that gender discrimination and/or retaliation motivated the CEO's decision to terminate plaintiff.[24] The court further concluded that because the CEO testified that he had received human resource law training and was knowledgeable about civil rights in the workplace this "could lead a reasonable juror to conclude that [the CEO] acted in the face of a perceived risk that his actions would violate Title VII."[25] In another Tenth Circuit case, the court determined that where there was testimony that the company trained its employees "concerning Title VII's prohibitions against harassment and retaliation," and that it was "mandatory," "[a] reasonable jury could have concluded that at least one managerial agent . . . was aware of the relevant federal prohibitions and nevertheless retaliated against [the plaintiff and] the jury could reasonably have found [the company] vicariously liable [for] punitive damages."[26]

Defendant argues that Wertz and Bristol were not aware that their actions would violate federal law. However, Ms. Wertz testified that she received her Master's degree in HR management and was well-versed in employment laws, including Title VII, through her work in human resources. She also testified that, as Vice President, she had oversight of discipline of

---

[21] *McInnis v. Fairfield Cmtys., Inc.*, 458 F.3d 1129, 1137–38 (10th Cir. 2006).

[22] *Id.* at 1138.

[23] 238 F. App'x 410 (10th Cir. 2007).

[24] *Id.* at 420.

[25] *Id.*

[26] *McInnis*, 458 F.3d at 1138.

employees and made sure that Bristol's policies and the law were followed. Based on this testimony, the Tenth Circuit's guidance, and the Court's conclusion above that a reasonable jury could conclude that retaliation was the but for cause of Plaintiff's termination in violation of federal law, a reasonable jury could conclude that Ms. Wertz's actions were taken in the face of a perceived risk that these actions would violate federal law. Therefore, there is sufficient evidence to support a claim for punitive damages. Accordingly, the Court will deny the Renewed Motion as to punitive damages.

### B. Motion for New Trial

Rule 59(a)(1)(A) provides that a new trial may be granted "after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court."[27] "A new trial may be appropriate where the jury verdict is against the weight of the evidence, the damages are excessive, a party was prejudiced by erroneous evidentiary rulings, or the trial was not fair to the moving party."[28] Defendant asserts two bases for the Court to order a new trial: (1) the excessiveness of the punitive damages award; and (2) the Court's decision not to instruct the jury on the *Kolstad* defense.

#### 1. Punitive damages award

Defendant argues that the punitive damages award should be reduced or in the alternative, that a new trial is warranted. Defendant asserts that the disparity between the jury's award of $75,000.00 in compensatory damages and its $5,000,000.00 punitive award "in this

---

[27] Fed. R. Civ. P. 59(a)(1)(A).

[28] *Megadyne Med. Prods., Inc. v. Aspen Labs., Inc.*, 864 F. Supp. 1099, 1102 (D. Utah 1994).

run-of-the-mill retaliation case reflects the jury's prejudice or bias," which "impaired its ability to objectively and fairly find the facts."[29]

"A new trial on damages is appropriate if an award is 'so excessive . . . as to shock the judicial conscience and to raise an irresistible inference that passion, prejudice, corruption or other improper cause invaded the trial.'"[30] "Such bias, prejudice or passion can be inferred from excessiveness."[31] "However, a verdict will not be set aside on this basis unless it is so plainly excessive as to suggest that it was a product of such passion or prejudice on the part of the jury."[32]"[A] remittitur may be appropriate if the error affects the amount of damages awarded without affecting the finding of liability."[33] "It is well settled that mere excessiveness in the amount of an award may be cured by a remittitur, whereas excessiveness which results from jury passion and prejudice may not be so cured. In that case, a new trial is required."[34]

While the punitive damages award of $5,000,000.00 is excessive based upon the facts as they were presented at trial and as compared to the noneconomic damages award, the Court does not find that the verdict was the result of the jury's passion or prejudice such "that the determination of liability is tainted."[35] Aside from the amount of the punitive damages award, Defendant does not point to any evidence that would suggest that the jury's bias, passion, or

---

[29] Docket No. 97, at 10.

[30] *Jensen v. W. Jordan City*, No. 2:12-CV-736-DAK, 2017 WL 4620983, at *14 (D. Utah Oct. 13, 2017) (quoting *Barnes v. Smith*, 305 F.2d 226, 228 (10th Cir. 1962)).

[31] *Malandris v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 703 F.2d 1152, 1168 (10th Cir. 1981).

[32] *Id.*

[33] *Osterhout v. Bd. of Cnty. Comm'rs of LeFlore Cnty.*, 10 F.4th 978, 996 (10th Cir. 2021) (citing *Malandris*, 703 F.2d at 1168).

[34] *Mason v. Texaco, Inc.*, 948 F.2d 1546, 1561 (10th Cir. 1991).

[35] *Malandris*, 703 F.2d at 1168.

prejudice tainted the jury's finding of liability. The Court finds that there is not a basis for a finding that the jury acted on passion or prejudice, and therefore, the award is merely excessive and the remedy of remittitur is appropriate, which in this case is accomplished by the statutory cap as discussed below.

    2.  *Kolstad* defense

Next, Defendant argues that a new trial is necessary because "the jury should have been permitted to consider the good-faith defense articulated in *Kolstad*."[36] The *Kolstad* good-faith defense prescribes that "in the punitive damages context, an employer may not be vicariously liable for [violative] decisions where th[o]se decisions are contrary to the employer's good faith efforts to comply with Title VII."[37] "A district court may not grant a new trial due to error "[u]nless justice requires otherwise."[38] "[T]he claimed error [must have] substantially and adversely affected the party's rights."[39]

Defendant argues that there was "overwhelming evidence of Bristol's good-faith efforts to comply with Title VII."[40] While there was evidence that Defendant implemented anti-retaliation policies, the *Kolstad* defense "is negated by a showing of direct malice or reckless indifference to the federally protected rights of [Plaintiff], by [the employee] who was designated by the company as the final decision-making authority responsible for implementing the

---

[36] Docket No. 102, at 7.

[37] *Kolstad*, 527 U.S. at 545 (internal quotation marks and citation omitted).

[38] Fed. R. Civ. P. 61.

[39] *Henning v. Union Pac. R.R. Co.*, 530 F.3d 1206, 1217 (10th Cir. 2008) (internal quotation marks and citation omitted).

[40] Docket No. 97, at 7.

company anti-discrimination policy."[41] As discussed above, the evidence introduced at trial supported that as the Executive Vice President of HR, Ms. Wertz had final decision-making authority responsible for implementing Bristol's anti-retaliation policies. It also supported that Bristol's CEO, Hyrum Kirton, approved Ms. Wertz's decision to terminate Ms. Graham.

> The *Kolstad* good-faith exception to punitive damages
>
> rooted in principles of agency law and the remedial purposes of the employment discrimination statutes, shields employers who make a bona fide effort to institute nondiscrimination policies, from the prospect of an award of punitive damages, when despite good faith efforts of the employer to comply with the law, employment discrimination has nonetheless occurred.[42]

Generally, "this exception will preclude punitive damages when a corporate defendant's nondiscrimination policy has been disregarded or violated by employees not of policy-making rank."[43]

The evidence introduced at trial supported that the decision to terminate Plaintiff was made by employees of policy-making rank, the Executive Vice President of HR and the CEO, and as such, the reasons underlying the *Kolstad* defense do not apply. Therefore, the Court finds that not instructing the jury on the *Kolstad* defense was not an error and will deny Defendant's Motion on this basis.

---

[41] *Deters*, 202 F.3d at 1271; *see Dodoo v. Seagate Tech, Inc.*, 235 F.3d 522, 532–32 (10th Cir. 2000) (concluding the *Kolstad* doctrine would be inapplicable based upon the plaintiff's direct liability theory and the facts of the case, as such the plaintiff would need to show malice or reckless indifference of the plaintiff's federal protected rights "on the part of the managers whom [the defendant] designated to implement the company's anti-discrimination policy").

[42] *Copley v. BAX Global, Inc.*, 97 F. Supp. 2d 1164, 1168 (S.D. Fla. 2000) (citing *Kolstad*, 527 U.S. at 540–546).

[43] *Id.*

C. Motion to Reduce Damages

Under 42 U.S.C. § 1981(a)(1), "[i]n action brought . . . under [Title VII] . . . the complaining party may recover compensatory and punitive damages . . . ." However, the sum of the damages are subject to statutory caps according to employer size.[44] Section 1981a provides that the sum of the amount of compensatory damages and punitive damages awarded shall not exceed "in the case of a [defendant] who has more than 500 employees . . . $300,000.00."[45] The parties agree that Bristol has more than 500 employees and as such, the $300,000.00 cap applies.

Defendant argues that the Court should reduce the punitive damages award because the award was excessive and constitutionally violated due process. It argues that the Court should first assess the constitutionality of the original amount awarded instead of the capped amount. Defendant does not provide a basis for the Court to consider the award before applying the statutory cap. Absent such a showing, the Court will follow the practice of the Tenth Circuit and other courts in the circuit and apply the statutory cap before considering Defendant's constitutional challenge.[46] Defendant asserts that it will "likely be prejudiced by the messaging of an unwarranted jury verdict of $5,000,000 in punitive damages."[47] It does not provide any further explanation of this prejudice or how assessing the reasonableness of the award prior to applying the mandatory statutory cap impacts the messaging of the jury's award. Beyond being unsupported, the Court finds that it would be an impractical exercise given the statutory cap governing Title VII retaliation cases.

---

[44] 42 U.S.C. § 1981a(b)(3).

[45] *Id.* § 1981a(b)(3)(D).

[46] *See Deters*, 202 F.3d at 1273; *Millazzo v. Universal Traffic Serv., Inc.*, 289 F. Supp. 2d 1251, 1255 (D. Colo. 2003); *Jones v. Rent-A-Center, Inc.*, 281 F. Supp. 2d 1277, 1279 (D. Kan. 2003).

[47] Docket No. 97, at 7 n.2.

Section 1981a establishes a regime whereby the jury will set the damages, without reference to the statutory cap. Then, if the damages awarded exceed the relevant limit, the district court shall reduce the amount so that it conforms with the statutory cap. The statutory cap is not the limit of the damages spectrum with which the judge might recalibrate the award given by the jury.[48]

Accordingly, the Court will apply the cap and reduce the total damages awarded to $300,000.00 before turning to constitutionality.

Applying the mandatory statutory cap of $300,000.00, minus the jury's $75,000.00 compensatory award, results in a punitive damages award of $225,000.00. This results in a punitive to compensatory damages ratio of 3:1.

"The Due Process clause prohibits the imposition of grossly excessive punishments on a tortfeasor."[49] "To satisfy due process, 'one must receive fair notice both that certain conduct will subject him to punishment, and the possible severity of the punishment that may be imposed.'"[50] The Supreme Court has established "guideposts" or factors by which courts assess the constitutionality of a punitive damages award. The factors are: (1) the degree of reprehensibility of the defendant's conduct; (2) the disparity between the actual harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages award and the civil penalties authorized or imposed in comparable cases.[51]

Defendant does not address the $225,000.00 punitive damages award under these guideposts, only applying them to the original $5,000,000.00 award in its Motion, and failing to

---

[48] *Deters*, 202 F.3d at 1273 (citing *Luciano v. The Olsten Corp.*, 110 F.3d 210, 221 (2d Cir. 1997)).

[49] *White v. Wycoff*, No. 13-cv-01761-CMA-MJW, 2016 WL 9632873, at *4 (D. Colo. June 24, 2016) (citing *Jones v. United Parcel Serv.*, 674 F.3d 1187, 1206–07 (10th Cir. 2012)).

[50] *BSNF Ry. Co. v. U.S. Dep't of Lab.*, 816 F.3d 628, 644 (10th Cir. 2016) (quoting *Deters*, 202 F.3d at 272).

[51] *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 574–75 (1996).

further address the issue in its Reply. Defendant does not appear to argue that the $225,000.00 punitive damages award is constitutionally excessive. Nonetheless, the Court will briefly address the issue below.

It is important to note that in terms of fair notice, Defendant "certainly had notice that it could be subject to punitive damages for involvement in discriminatory practices with malice or reckless indifference to an individual's federally protected rights, by virtue of the plain language of Title VII itself."[52]

Turning to the first guidepost, the degree of reprehensibility is considered "the most important indicium of the reasonableness of a punitive damages award."[53] "To determine the reprehensibility of a defendant [the court should] consider[] whether: the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an insolated incident; and the harm was the result of intentional malice, trickery or deceit, or more accident."[54]

As to the first consideration, Plaintiff testified that when she was fired, she was anxious, lost confidence, lost weight, and had trouble functioning normally. Further, Ms. Wertz was the Executive Vice President of HR and testified to her training on Title VII and heavy involvement in the company's anti-retaliation and discrimination policies. There was also testimony and evidence presented at trial that Ms. Wertz terminated Plaintiff's employment after Plaintiff had

---

[52] *Deters*, 202 F.3d at 1272.

[53] *BMW*, 517 U.S. at 575.

[54] *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 429 (2003).

withdrawn a Charge of Discrimination against Ms. Wertz and another employee, and Plaintiff was not permitted to respond to the allegations against her.

It is rational that the jury believed Plaintiff's testimony and found Defendant's conduct sufficiently reprehensible as to be penalized by punitive damages. Further, the Court finds that a punitive damages award of $225,000.00 is rational given the evidence presented at trial and Defendant's notice under Title VII and § 1981a as discussed above.

The Court next looks to the ratio of the punitive damages award to the compensatory award. There are not bright line rules as to whether a ratio "push[es] the boundaries of due process requirements."[55] However, the Supreme Court has concluded that "in practice, few awards exceeding a single digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process."[56]

In this case, as discussed above, the jury awarded $75,000.00 in noneconomic damages and after the statutory cap is applied, $225,000.00 in punitive damages remains, which is a 3:1 ratio. The Court does not find this ratio disproportionate.

Defendant suggests it would be appropriate to reduce the punitive damages award to $75,000.00 or a 1:1 ratio.[57] In addressing a punitive damages award capped under § 1981a, the Tenth Circuit concluded that "only when an award would shock the judicial conscience, and constitute a denial of justice, for example because it would result in the financial ruin of the defendant or constitute a disproportionately large percentage of a defendant's net worth, will [the court] reduce the award below the statutory cap."[58] There is no evidence that the capped award

---

[55] *Jones*, 674 F.3d at 1207–08.

[56] *State Farm Mut. Auto Ins. Co.*, 538 U.S. at 425.

[57] Docket No. 102, at 10.

[58] *Deters*, 202 F.3d at 1273 (internal quotation marks and citations omitted).

would result in the financial ruin of Bristol or that it constitutes a large percentage of Bristol's net worth. Given the facts of the case and the punitive damages award under the cap, the award also does not otherwise shock the judicial conscience and as such the Court will not further reduce the punitive damages award.

## III. CONCLUSION

It is therefore

ORDERED that Defendant's Renewed Motion for Judgment as a Matter of Law (Docket No. 97) is DENIED; it is further

ORDERED that Defendant's Motion to Reduce Damages Award (Docket No. 97) is GRANTED IN PART and DENIED IN PART; it is further

ORDERED that the punitive damages award is reduced to $225,000.00.

DATED August 3, 2026.

BY THE COURT:

_____

TED STEWART
United States District Judge